**PERKINS COIE LLP**
DAVID P. CHIAPPETTA, *State Bar No. 172099*
*DChiappetta@perkinscoie.com*
MARA BOUNDY, *State Bar No. 287109*
*MBoundy@perkinscoie.com*
Four Embarcadero Center, Suite 2400
San Francisco, California 94111
Telephone: 415.344.7000
Facsimile: 415.344.7050

DAVID J. BURMAN, *Pro Hac Vice pending*
*DBurman@perkinscoie.com*
SHYLAH R. ALFONSO, *Pro Hac Vice to be filed*
*SAlfonso@perkinscoie.com*
DAVID S. STEELE, *Pro Hac Vice to be filed*
*DSteele@perkinscoie.com*
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff,
COSTCO WHOLESALE CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COSTCO WHOLESALE CORPORATION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| JOHNSON & JOHNSON VISION CARE, INC., | |
| Defendant. | |

Plaintiff, Costco Wholesale Corporation ("Costco"), alleges as follows:

## I.  INTRODUCTION

1.      Defendant, Johnson & Johnson Vision Care, Inc. ("J&J"), manufactures and sells contact lenses, and is the dominant company in a unique marketplace.  Costco purchases lenses from J&J and resells them, most recently pursuant to a Qualified Retail Account Agreement ("Agreement").

2.      Eye care professionals ("ECPs," mainly optometrists and ophthalmologists) charge consumers a fee determined by the ECP for the service of addressing the consumer's eye condition and determining the appropriate contact lens prescription.  In addition to the service or "fitting" fee, many ECPs also fill the prescriptions and make additional profit on sales of contact lenses.  Some ECPs do not themselves sell contacts, but some of those occupy space on the premises of other businesses that fill contact lens prescriptions.

3.      ECPs are the only contact retailers that can legally prescribe contacts for consumers, and once they do so, neither the consumer nor a competing contact retailer can substitute even an equivalent product except in unusual circumstances.

4.      Because consumers must replace their contacts, as often as daily, they must make repeated purchases.  Retailers such as Costco obtain much of their business from such customers. For example, by seeking to offer the most competitive prices on J&J contact lenses, Costco seeks to attract its members away from those who sell J&J lenses at higher prices, what economists refer to as "intrabrand competition," and it seeks to attract new members by offering such value. Costco cannot, however seek to compete for such sales and members by filling J&J prescriptions with Bausch & Lomb contact lenses.  This restriction drastically limits competition between brands at the retail level, what economists refer to as "interbrand competition."

5.      In the Fairness to Contact Lens Consumers Act ("FCLCA") and studies and rules implementing it, Congress and the Federal Trade Commission have recognized the unique nature of the industry, the separation of the contact lens fitting service (and fee) from the retail purchase of contact lenses, the impact of the prescription on subsequent purchases, and the importance of intrabrand price competition.  As the FTC stated in 2004, the FCLCA "increases consumers'

COMPLAINT
Case No.

1  ability to shop around with buying contact lenses," and the FCLCA and the FTC's rules prohibit

2  ECPs from requiring purchase of contacts from themselves or tying the service or service fee to

3  the purchase.

4        6.    Many retailers and their agents—including trade associations, ECP buying groups,

5  and distributors—have engaged in concerted action to restrain competition by restricting other

6  retail competitors and by imposing minimum retail price or resale price maintenance policies

7  ("RPM").  Such efforts resulted in an illegal conspiracy that was challenged in actions filed by

8  numerous states, including California and New York, and which were resolved in 2001.  The

9  consent decree settling that dispute has expired, and J&J and J&J's retailers and distributors have

10  once again acted together to impose minimum retail prices and to increase prices to consumers,

11  without any corresponding benefit to consumers.

12        7.    For at least ten years, ending in 2014, however, J&J did not dictate the prices at

13  which Costco or other retailers sold J&J contacts, and J&J in fact supported efficient retailers by

14  lowering prices to consumers through coupons and rebates funded by J&J.  During that time, J&J

15  did not suggest, and Costco did not observe, that the clinical or other experience of consumers

16  suffered due to competitive pricing for contact lenses or the absence of an RPM policy.  When

17  free to set its own prices, Costco generally offered values to consumers that were superior to

18  those offered by ECPs.

19        8.    Recently, however, J&J responded again to the requests of ECPs to limit

20  competition by "discounters."  J&J agreed with ECPs, among others, to require certain minimum

21  retail prices, referred to herein as J&J's RPM Policy (including each of its revisions).  Because

22  interbrand competition to fill a prescription is so restricted, practices such as retail price

23  maintenance that reduce intrabrand competition increase incentives for retailers that both

24  prescribe and fill prescriptions to prescribe the brand and type that provides the greatest profit,

25  whether as margin on the immediate purchase or through increased repeat business.

26        9.    Costco objected to J&J's RPM Policy and violated it, resulting in threats from J&J

27  that it would refuse to sell lenses to Costco.  Through negotiations with Costco and other retailers,

28  J&J agreed to a series of revisions to the RPM Policy.  Some revisions modestly reduced the

COMPLAINT
Case No.

1   harmful impact on consumers, and Costco agreed to them, but Costco continued to object to other

2   provisions and to the entire premise of an RPM policy.  To reduce the cost and inconvenience to

3   its members, however, Costco has protested J&J's RPM but has for the time being complied with

4   the revised policy.  That has resulted in substantially higher prices on J&J lenses that Costco sells.

5         10.    The concerted action to impose minimum retail prices has been implemented

6   through at least the following:

7          a)   Requests, demands, negotiations, and formal and informal understandings between

8               J&J, retailers, and others to adopt, implement, and enforce minimum retail prices;

9          b)   Agreement by J&J and its distributors that none of them will sell, at least for a

10              time, to any retailer that does not follow the minimum retail prices; and

11         c)   An offer by J&J to reinstate, after a time, suspended retailers who thus indicate

12              their agreement to the minimum retail prices.

13         11.    The resulting minimum retail prices are unreasonably anticompetitive in light of

14   the following and other factors:

15          a)   Increased consumer harm in terms of increased prices and reduced choices and

16              innovation without gaining anything in return;

17          b)   Increased incentives for prescription choices by ECPs to be influenced by profit

18              considerations that threaten patient care;

19          c)   Increased barriers to entry at the wholesale level;

20          d)   Facilitation of collusion to increase and stabilize prices;

21          e)   Increased market power of less efficient groups of retailers;

22          f)   Initiation of the restraint on intrabrand competition by retailers;

23          g)   Absence of effective interbrand price competition;

24          h)   Concentrated nature of, and barriers to entry in, the manufacturing and wholesale

25              market;

26          i)   Significance of J&J's market power;

27          j)   Adoption of minimum retail prices by most manufacturers for the most popular

28              contacts, and the fact that doing so was not in their independent interest;

-3-

COMPLAINT
Case No.

k)  Control over consumer choice and ultimate demand for manufacturer's products exercised by ECPs through the prescription process;

l)  Absence of free-riding, brand image, service issues, or other potential manufacturer concerns;

m)  Intent to raise prices and other anticompetitive motivations of retailers, J&J, and J&J's distributors; and

n)  False statements made by J&J as to the motivations for and effects of the minimum prices.

12.  Under the parties' Agreement; the Sherman Act; the Federal Trade Commission Act; and California, New York, Maryland, and other state laws, J&J is not entitled to dictate Costco's retail prices or to threaten to terminate Costco or otherwise constrain Costco's purchasing from J&J on the basis that Costco rejects RPM.  Costco requested in February 2015 that J&J cease its demands, but J&J has nonetheless threatened Costco with interruption of supply, contrary to the Agreement, unless Costco abides by J&J's minimum retail prices.  Costco has suffered injury, including harm to its business model and to its goodwill with its members, and until Costco's rights are clarified, Costco will continue to suffer such harm.  Costco thus is compelled to seek judicial resolution of its rights and the requirements of the Agreement and federal and state law.

## II.  THE PARTIES

13.  Costco is a Washington corporation with its headquarters in Washington.  It is a membership-based warehouse club dedicated to bringing its members the lowest prices on quality name brands and select private-label products in exchange for their annual membership fees. Costco has locations nationwide, but the largest number of its members and locations in any state are in California.  Costco offers a wide variety of merchandise, from food products, furniture, and office supplies, to eye care products.

14.  One of Costco's core offerings is its Optical Department, which buys contact lenses directly from manufacturers and sells them to members at prices that it believes, at least in the absence of the RPM Policy, are generally lower than those of other contact lens retailers.

-4-

COMPLAINT
Case No.

15.     J&J is a Florida corporation with its headquarters in Florida.  J&J belongs to a family of companies specializing in medical devices, pharmaceuticals, and consumer packaged goods, with sales of $71 billion in 2013.  J&J is the largest manufacturer of contact lenses in the country, selling at least 43% of all lenses sold in the United States.

16.     Costco purchases a large volume of contact lenses from J&J.  This business relationship is presently governed by the Agreement, which is to be construed under the laws of the State of New York and which incorporates the RPM Policy.

17.     Various entities not made defendants in this lawsuit, including but not limited to contact lens distributors, consultants, and ECPs, have participated as co-conspirators with J&J in the antitrust violations asserted in this Complaint.

### III.     JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1337, and 1367.  The manufacture, distribution, fitting, prescribing, and retailing of contact lenses are commercial activities that substantially affect, and are in the flow of, interstate trade and commerce.  The conspiracy and challenged actions affect these commercial activities and the contact lens markets alleged below, and substantially affect interstate commerce.

19.     The Court has personal jurisdiction over the parties because they conduct business in the State of California and have consented to jurisdiction in this District.

20.     Venue is proper because the parties conduct business in the Northern District of California and have consented to venue in this District.

### IV.     INTRADISTRICT ASSIGNMENT

21.     The Agreement provides that jurisdiction and venue for any dispute between the parties shall lie exclusively in the State and Federal Courts of San Francisco, California.  Further, the actions of J&J challenged in this action have affected and continue to affect the sale of contact lenses occurring in San Francisco, California, and these actions have harmed and continue to harm Costco, competition, and consumers, including Costco's members, in San Francisco, California.  Intradistrict assignment to the San Francisco Division of this Court is therefore appropriate.

-5-

COMPLAINT
Case No.

## V. FACTUAL BASIS FOR CLAIMS

22.     Costco incorporates the facts set forth in Paragraphs 1-21 above.

**A.     The Contact Lens Industry**

23.     In 2013, the retail sales volume of contact lenses in the United States was $4.74 billion, and the number of contact lens wearers was 37 million.  There are four primary contact lens manufacturers:  J&J, which operates under the Vistakon name in the United States; Alcon; CooperVision; and Bausch & Lomb.  In 2013, these four manufacturers accounted for 98.5% of the revenue from contact lenses in the United States.  Costco purchases certain contact lenses from each of the four.

24.     These manufacturers also sell significant volumes of contact lenses to authorized distributors, several of which indicate that they operate as buying collectives for ECPs.  The primary distributors for J&J include ABB Concise, AC Lens, Diversified Ophthalmics, Imperial Optical, Nassau Vision Group, The Newton Group, and WVA.

25.     ABB Concise, for example, advertises itself to ECPs as being "dedicated to help you build profits," providing a "Quarterly Profit Advisor, Retail Price Monitor, [and] personalized business review."  ABB Concise actively promotes the implementation of RPM policies and even higher prices and describes to ECPs how to use minimum pricing to increase revenue.

26.     By law, contact lenses in the United States are sold only by prescription.  The level of service from ECPs in the prescription process is determined primarily by professional standards of care and the service fee.  Consumers have no reasonably accessible source of information as to variations in ECP services, service charges, or contact lens prices, and J&J has attempted to make that situation even worse by requiring that retailers agree not to advertise prices.  Except in limited circumstances, neither the consumer nor the retailer has the power to substitute an alternative or cheaper option to the prescribed brand, such as generic equivalents, severely restricting interbrand competition at the retail level.

/ / /

/ / /

-6-

COMPLAINT
Case No.

27.     Contact lens manufacturers are strongly motivated to agree to the anti-discounting requests of retailers who write contact lens prescriptions even if doing so would not be in the manufacturers' independent interest in a competitive market.

28.     While there is limited interbrand competition for the retailing of contact lenses, there has been *intra*brand competition at the retail level in recent years.  Intrabrand competition as to price is vital and provides significant savings and choices to consumers.  Specialized and big box retailers, pharmacies, and online retailers dispense contact lenses in competition with each other and the dual-positioned ECPs.  These retailers generally do not also have the ability to prescribe, i.e., dictate the contact lens brand and type.  Although there are optometrists at some of these stores, state laws effectively prohibit the retailer from directing the prescription practices of these optometrists.

29.     Many retailers are openly unhappy with price competition on lenses from other retailers and historically have asked manufacturers to agree to restrain this competition.  Intrabrand retail price competition results in lower margins and lower sales volume for retailers who sell contact lenses.

30.     By severely restricting intrabrand competition at the retail level, RPM increases the number of captured sales and the profit margins on those sales.  Inelasticity in the retail market for contact lenses means any loss in volume will be overcompensated by margin gains.

31.     For example, for the ACUVUE Oasys contact lens, the top-selling contact lens brand in the world, the prices required by the RPM Policy average at least 20% above what many retailers had effectively been charging.  The RPM Policy required one internet seller to increase its price on one brand and type by over 100%.

32.     The RPM prices create financial incentives to favor RPM lenses for retailers that both write and fill prescriptions.  ABB Concise reported that nearly three quarters of retailers it surveyed were more inclined to prescribe RPM products than non-RPM products.  The RPM Policy increases their "capture" rate (the percentage of prescription customers that also purchase lenses from them) and profit margins, and restricts retail intrabrand competition.

/ / /

COMPLAINT
Case No.

**B.      Relevant Product Markets**

33.      The relevant markets include (1) the upstream market for contact lenses available at wholesale ("Wholesale Contact Lens Market"), and (2) the downstream retail markets for each brand and type of contact lens ("Retail Contact Lens Markets").  The Wholesale Contact Lens Market and Retail Contact Lens Markets are collectively referred to herein as the "Contact Lens Markets."

34.      The Wholesale Contact Lens Market is a cognizable antitrust market.  The boundaries of the Wholesale Contact Lens Market are determined by the low cross-elasticity of demand between contact lenses and potential substitutes.  A small non-transitory increase in price for contact lenses would not cause consumers of contact lenses to switch to glasses or any other product or service to correct the consumer's vision in sufficient numbers to defeat the price increase.

35.      The Wholesale Contact Lens Market is highly concentrated, with only four main competitors, and concentration has been increasing.  J&J has market power.  J&J's current market share is at least 43%, Alcon's is approximately 23%; CooperVision's is approximately 22%; and Bausch & Lomb's is approximately 11%.  J&J's market share underestimates J&J's actual market power given such factors as the high barriers to entry and high concentration in the Wholesale Contact Lens Market.  J&J has complete market power in each of the Retail Contact Lens Markets for each of its contact lens brands and types.

36.      The Wholesale Contact Lens Market has high barriers to entry.  The design and manufacture of contact lenses requires complex technology, know-how, and skilled labor that takes years to develop.  Manufacturers bear substantial upfront research and development costs as well as significant facility and other infrastructure costs.  Entry barriers for contact lens manufacturers include patents and necessary regulatory approvals.  The cost of competing in the Wholesale Contact Lens Market includes significant costs for marketing and advertising.

37.      The Retail Contact Lens Markets are cognizable antitrust markets.  The boundaries of the Retail Contact Lens Markets are determined by the low cross-elasticity of demand between contact lenses and potential substitutes.  Because a retailer cannot substitute for the prescribed

COMPLAINT
Case No.

brand and type of contact lens, the retail markets are limited to each brand and type of contact lens that can be prescribed.  For example, ACUVUE Advance is one Retail Contact Lens Market, and ACUVUE Advance for Astigmatism is another Retail Contact Lens Market.  There is no cross-elasticity of demand between contact lenses once they are prescribed.

38.     A small non-transitory increase in price for contact lenses would not cause consumers of contact lenses to switch to glasses or any other product or service to correct the consumer's vision in sufficient numbers to defeat the price increase.  Nor would a small non-transitory price increase cause contact lens distributors or retailers to otherwise change their activities sufficiently to make such a price increase unprofitable to a manufacturer with market power.  Consumers are unable to constrain market abuses because the ECP prescribes the brand and type.

**C.     Relevant Geographic Markets**

39.     The geographic market for the Wholesale Contact Lens Market is the United States.  Because of legal restrictions on contact lens prescriptions, J&J and other manufacturers package their products specifically for the United States market.

40.     The geographic market for prescription services is local, and a small non-transitory increase in price for ECP services would not cause a consumer to travel outside of the range of his or her daily activities.

41.     As to the geographic market for the Retail Contact Lens Market, although a contact lens prescription can be filled anywhere in the country and replacement lenses can be purchased by mail or at more remote retailers, effective RPM eliminates the price advantages of such options, and lack of consumer information allows small non-transitory increases in price above RPM levels by local retailers.

**D.     Genesis of the Concerted Action**

42.     Some ECPs have historically sought to leverage their control over prescriptions to extract from manufacturers in the Wholesale Contact Lens Market concerted actions to prevent or limit the effects of price discounting and other competition in the Retail Contact Lens Markets, such as agreements not to sell to internet discounters.  As a result, Attorneys General from 32

-9-

COMPLAINT
Case No.

states and a national class of consumers brought actions against the American Optometric Association and the major contact lens manufacturers—including J&J—for conspiring with retailers and each other to restrain competition by online companies, pharmacies, and big box retailers.  The Attorneys General charged that the trade associations and members obtained agreement by manufacturers by threatening to boycott those who would not agree to bar direct distribution of their lenses to such alternative retailers.  The anticompetitive practices caused substantial economic injury to consumers.  The Court concluded that there was a genuine issue of material fact as to the existence of the alleged conspiracy.  The parties eventually settled, with the manufacturers agreeing to abandon restrictive distribution policies for at least five years and optometrists agreeing not to refuse to cooperate in filling of prescriptions elsewhere absent a specific identified and documented health need of the individual patient.

43.     Some ECPs, however, continued to seek to restrict competition.  A primary method was to "capture" their patients by not giving them prescriptions that could be filled at lower prices from other retailers, the equivalent of a medical doctor forcing a patient to obtain prescription drugs only from the prescribing doctor.  In 2003, to increase price competition from alternative retailers, and rejecting any argument that clinical outcomes required that lenses be supplied by the prescribing ECP, Congress enacted the FCLCA, which prohibits some anticompetitive activities involving contact lens sales.  The main purpose for the FCLCA was to help consumers buy contact lenses at a discount from someone other than an ECP.  The law thus required ECPs to release their prescriptions to patients so that patients can have the freedom to choose their contact lens retailer.  Pursuant to regulations implementing the FCLCA, any seller of contact lenses may sell lenses to consumers if in accordance with a contact lens prescription issued to the consumer.  Congress believed that the perceived benefits of the law and rules depended on intrabrand price competition by alternative retailers.

44.     In addition to the settlement and legislation in the United States, J&J and other contact lens manufacturers have been accused of restricting competition and stabilizing prices in other countries, including Germany and China.

/ / /

-10-

45.     Thwarted in their anti-discounting effects by litigation and an Act of Congress, some ECPs and manufacturers determined to devise another scheme to "capture" patients, and they falsely presented it as an effort to lower prices and improve patient care.

46.     In the United States, on June 1, 2013, Alcon announced an RPM Policy requiring all dispensers to not charge below a minimum price for the DAILIES TOTAL1.  Violation of Alcon's policy would result in the termination of supply of that product for one year.  Costco did not purchase this product and objected that the policy was illegal.  Alcon nonetheless expanded its RPM Policy to AquaComfort Plus Multifocal and Toric lenses in January 2014 and then to Air Optix Colors lenses in May 2014.  Costco elected not to sell these products.

47.     In 2014, Bausch & Lomb also instituted an RPM Policy for one of its lenses, the ULTRA contact lens.  Costco did not sell this item.

48.     In January 2014, Sauflon Pharmaceuticals announced an RPM Policy for the CLARITI family contact lenses.  In August 2014, CooperVision completed its acquisition of Sauflon.  On September 20, 2014, CooperVision announced that it would continue Sauflon's RPM Policy for the CLARITI family of lenses.  Costco does not sell this item.

49.     Recognizing greater margins and increased sales from the RPM Policies, some retailers urged J&J, the largest contact lens manufacturer, to follow suit and agree to an RPM requirement.  J&J's President of the Americas sought "feedback on what we were doing well and areas where we could improve."  In a letter dated June 24, 2014, J&J acknowledged this coordination and thanked ECPs for their "open and candid responses," which allowed J&J "to define our strategy and implement the changes and actions you told us were needed."  J&J conspired with ECPs in these communications and meetings to devise and ultimately agree upon an RPM Policy that J&J introduced in an effort "[t]o further demonstrate [its] commitment to prescribers."  J&J and these retailers had a conscious commitment to a common scheme designed to achieve an unlawful objective.  The retailers needed the agreement of J&J because J&J could implement effective restraints on retail pricing of its contact lenses.  Although the RPM Policy was not unilateral in fact, J&J describes it as a "Unilateral Pricing Policy" or "UPP."

/ / /

-11-

COMPLAINT
Case No.

50.     J&J also needed the agreement of its distributors, which it knows represent many retailers, and which it needed to help enforce the RPM Policy and avoid the Policy's being undercut by interbrand competition at the wholesale level. As evident from the face of the RPM Policy, J&J and its distributors agreed to concerted action to implement and enforce the RPM Policy against any retailer that violated the policy: "Under this policy, [J&J] and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price . . . ." Exhibit A at 1. Distributors are also actively encouraging retailers to utilize RPM Policies to maximize revenue. ABB Concise's "Profit Advisor" publication contains specific instructions on how ECPs should utilize RPM to enhance ECP revenues and charge even more than RPM prices. J&J and its distributors share a conscious commitment to a common scheme designed to achieve an unlawful objective.

51.     With agreement of many retailers and distributors in place, J&J publicly announced in June 2014 that it would launch its RPM Policy in July, applicable to a 12-pack of ACUVUE Oasys lenses that would replace a 6-pack. Starting in August 2014, the RPM Policy would extend to the majority of J&J's existing products as well as all future products. At the same time, J&J announced that it would no longer provide funding for discount coupons or mail-in rebates. Under the RPM Policy, if a retailer priced any covered product below the minimum price, J&J and its distributors would cease supplying the retailer with all of J&J's covered products, apparently regardless of the retailer's contractual rights. The general termination period was not specified, leaving J&J free to apply different termination periods to different retailers.

52.     After input from ECPs, J&J revised the policy on June 16 ("Second RPM Policy") to add that a "bundled offer cannot include 'free' products or services." Exhibit B at 3. The RPM price "covers both the advertised price and the final sale price." Exhibit B at 2.

53.     J&J asked Costco to comply with J&J's RPM Policy and repeatedly sought to find some "middle ground" or "common ground" with Costco. J&J promised to "brainstorm" to propose an acceptable solution for Costco. Despite twice finding that Costco's prices were not conforming to J&J's retail price minimums, J&J gave Costco time to conform. J&J asked Costco

-12-

1   to "fix the pricing" but also offered to negotiate adjustments to the RPM Policy, at least with

2   respect to consumers that buy an annual supply of Oasys brand extended-wear contacts.

3          54.     Although Costco was and remains opposed to the RPM Policy, it negotiated

4   adjustments to the Policy to lessen as much as possible the impact on Costco members.  J&J

5   agreed to a revised RPM Policy on August 7 ("Third RPM Policy").  Among other modifications,

6   the Third RPM Policy "[c]reated an exception to the combined product discount requirements."

7   Exhibit C at 1.  The exception permitted in-store credits up to $50 when the consumer purchased

8   an annual supply, as long as, among other conditions, the price of the ACUVUE product is equal

9   to or above its RPM price before netting out the credit, and the credit may only be used for future

10   product purchases that cannot include contact lenses.  Exhibit C at 3.  A combined product

11   discount also now permitted a discount to be applied to the purchase of an annual supply of

12   ACUVUE contact lenses along with another optical product (excluding other contact lenses), as

13   long as, among other conditions, the price of the ACUVUE product was equal to or above its

14   RPM price without netting out the credit.  The credit may only be applied to the non-RPM optical

15   products, although all items and discounts included in the offer must be part of the same

16   transaction.  Exhibit C at 3.

17          55.     At the same time that J&J was negotiating with Costco, it was continuing to

18   negotiate with other retailers.  Some retailers had bundled contact lens sales with discounts on

19   frames or other optical products, and J&J agreed to permit this combined product discount in the

20   Third RPM Policy.

21          56.     On August 7, J&J sent Costco a further revised RPM Policy ("Fourth RPM

22   Policy") making clear that any in-store credit as part of a now permitted combined product

23   discount cannot be advertised externally.  Exhibit D at 3.  This restraint was the result of further

24   negotiation between J&J and other retailers that were alarmed that in-store credits through gift

25   cards would be permitted under the Third RPM Policy.  To assuage this concern, J&J agreed with

26   them in its Fourth RPM Policy to prohibit the external advertisement of such credits and thus

27   limit their effectiveness as a method of competition.  This prohibition came in spite of J&J

28   otherwise claiming to promote "transparency" in the Contact Lens Markets.

-13-

COMPLAINT
Case No.

57.     The Third and Fourth RPM Policies allowed Costco to reduce prices for annual purchases of some of J&J's contact lenses but only through cash cards, which are inefficient for both Costco and its members.  Those policies also did not permit Costco to apply even that approach to all involved J&J contact lenses or to volumes below the annual purchase level. Costco made it clear to J&J that an acceptable long term solution would require that all products return to pre-RPM pricing and that Costco believes it is legally entitled to determine its pricing.

58.     On September 25, Costco met with J&J to discuss what J&J indicated was its "new solution for Costco."  During the meeting J&J acknowledged that it was responding to the demands of other retailers.  Negotiations to revise the RPM Policy continued between J&J and Costco throughout the week.

59.     Agreement to additional discounts was memorialized in a "Fifth RPM Policy" through a "Club Channel Amendment" on October 5.  Exhibit E.  This amendment allowed 10% off the RPM pricing at club stores in the form of a gift card to be used on a subsequent purchase that could not include J&J contact lenses and still left almost all of J&J's lenses at higher RPM prices, and Costco was prohibited from advertising that cash cards were available to partially offset the RPM price increases.

60.     Negotiations continued into January 2015 without any further agreements being reached.  Costco nonetheless concluded thereafter that the best interests of its members required that it agree at least temporarily with J&J and enter the Agreement--which incorporated the Policies to the extent legal.  J&J's contact lens products constitute more than 50% of contact lens sales at Costco, and it is impossible for Costco to substitute non-J&J contact lenses.  The continuing threat of termination by J&J compelled Costco to agree to comply with the Fifth RPM Policy until Costco's rights can be determined in this action.  Since that time, J&J has nonetheless attempted to negotiate additional modifications to its RPM.  Each time, Costco has maintained its disapproval of J&J's RPM Policy and has reiterated its position that J&J's RPM is harmful to Costco's business model, its members, and competition.

61.     At no time during any of the communications between J&J and Costco did J&J identify any deficiency on the part of Costco in its conduct preceding the RPM Policy or explain

-14-

1   how the Policy would cause Costco to provide better services, enhance the dialogue between

2   patients and doctors, lower prices, or promote interbrand competition. To the contrary, J&J

3   identified the purpose of the RPM requirement as giving "the optometrist the ability to improve

4   his or her capture rate in the office. . . . Now the patient has no incentive to shop around." J&J's

5   letter announcing the RPM Policy never mentioned the interests of patients or even its own

6   interests. ABB Concise's "Profit Advisor" publication confirmed the basis for the RPM Policy,

7   focusing not on improving client services or education but on eliminating price competition.

8          62.    J&J's RPM Policies and the various modification were not the product of J&J's

9   unilateral decision or independent interests but were instead the result of concerted action,

10  negotiation, and agreement.

11  **E.     Anticompetitive Effects and Injury**

12         63.    The anticompetitive concerted action has harmed consumers, including Costco

13  members, most directly by increasing the prices they pay for contact lenses. Prior to J&J's RPM

14  Policy, Costco's prices for contact lenses were generally 25 to 30% lower than those of many

15  competitors. 1-800 Contacts similarly reported that, for example, for one J&J brand, ACUVUE

16  Oasys, it was forced to increase its prices about 30% as the result of J&J's RPM Policy.

17  Consumer Reports, an independent nonprofit organization, analyzed the RPM Policies and found

18  that they do not provide any benefits and only increased prices for consumers. J&J's RPM Policy

19  diverts sales from more efficient, lower cost retailers such as Costco, and some retailers are

20  setting prices above J&J's minimum prices and not employing available discount exceptions. For

21  these reasons, Costco's members are harmed by the RPM Policy but better off than they would be

22  if Costco refused to sell J&J lenses on J&J's terms.

23         64.    The RPM Policy has no beneficial impact on retail interbrand competition, and

24  impairs wholesale interbrand competition. The RPM Policy cannot enhance interbrand

25  competition at the retail level. Interbrand competition principally occurs at the wholesale level,

26  and even there the manufacturers are now focused on pleasing ECPs by facilitating high

27  minimum retail prices and margins rather than lowering wholesale prices. Absent collusion, J&J

28  and other manufacturers would compete in part through increased use of more efficient retailers.

-15-

COMPLAINT
Case No.

65.     The RPM Policy further seeks to all but eliminate intrabrand competition. Through intrabrand competition, Costco and other retailers provide lower prices and increased choice to consumers.  With the absence of any meaningful interbrand competition, intrabrand competition was the last viable channel of competition in the contact lens industry.

66.     In addition to increased prices, consumers also face reduced choice.  Prescriptions of non-RPM products have been reduced, and fewer options for prescriptions means fewer options for retail sale.

67.     At the wholesale level, J&J's RPM Policy is a disincentive to innovate or provide enhanced services.  Rather than compete with innovative products, use of more efficient retailers, better services, or lower wholesale prices, J&J is maintaining or even increasing market share based on the increased margins and sales it can facilitate for ECPs.  This raises barriers to entry by creating a disincentive for ECPs to purchase from new or smaller rivals.

68.     Costco has incurred and will incur antitrust injury from the violations of law alleged and would not have incurred such injury in the absence of the anticompetitive agreements and conduct.  Even though Costco's margin on RPM lenses has increased, that harms Costco's business model, which is to provide better value to its members for their membership fees.  The RPM Policy harms Costco's goodwill with its members, increases Costco's administrative costs, and will result in reduced unit sales of contacts and other products.  Costco also has standing to protect its members from paying more than they otherwise would for contacts.  The harms to competition, consumers, Costco members, and Costco are the types that antitrust laws were designed to prevent, and those harms flow directly from that which makes J&J's conduct and agreements unlawful.

69.     The challenged concerted action is intended to increase prices, and there are no legitimate business justifications for the challenged concerted action.  Any alleged procompetitive justification is pretextual.

70.     Retailers cannot free-ride on prescription services because even if patients take the prescription to a different retailer, the prescriber's services have already been compensated through the fitting fee.  The RPM Policy has no impact on the fitting fee, and thus the American

-16-

Optometric Association has expressed no concern about free-riding.  In fact, RPM reduces the prescriber's incentive to discuss choices with consumers and increases the incentive to prescribe a particular brand for financial rather than clinical, product quality or innovativeness, or other reasons.

71.     J&J's RPM Policy applies to all retailers, whether or not they also provide eye care services.  It is impossible for the RPM Policy to affect patient services in situations where lenses are sold by retailers that do not have eye care services.  Even in situations where a prescriber is also a retailer, there is nothing in the RPM Policy that dictates or affects what dispensers must do with their higher profits.  The Policy imposes no duties in the way of furthering clinical dialogue or service, and there are numerous more effective alternatives to address any such issues.

72.     The RPM Policy does not require or even encourage retailers to invest in tangible or intangible services or promotional efforts that might improve patient care or aid the manufacturer's position versus rivals.  Non-ECP retailers have no ability to influence the brand or type of prescribed contact lens, and thus have no need or incentive to engage in such promotional efforts.  The RPM Policy creates an incentive for dual-positioned ECPs to prescribe lenses for financial reasons.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT AS TO THE PARTIES' CONTRACT

73.     Costco realleges each of the allegations above as if fully set forth in this claim.

74.     The Agreement incorporates the RPM Policy generally but more specifically requires that J&J comply with all laws.  Requiring minimum resale pricing in these circumstances does not comply with federal and state antitrust and consumer protection laws or with the intent of the FCLCA.

75.     In addition to the claims below, J&J's minimum resale price requirement violates Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.  Defendant's practices have caused or are likely to cause substantial injury to consumers, including Costco members, that

-17-

1    consumers themselves cannot reasonably avoid and that is not outweighed by countervailing

2    benefit to consumers or competition.

3        76.      The Court should declare that the contractual relationship between J&J and Costco

4    shall continue so that Costco may sell J&J contact lenses at competitive prices and regardless of

5    Costco's decisions as to the prices at which it sells J&J contacts, and grant such ancillary relief as

6    is necessary to restore competition in the Contact Lens Markets and redress injuries suffered by

7    Costco before effective relief is awarded.

8                          **SECOND CAUSE OF ACTION**

9    **RESTRAINT OF TRADE UNDER SECTION 1 OF THE SHERMAN ACT**

10        77.      Costco realleges each of the allegations above as if fully set forth in this claim.

11        78.      J&J participated in concerted action to restrain trade and competition in the

12    Contact Lens Markets, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. J&J

13    accomplished this conspiracy by colluding and agreeing with ECPs, its distributors, and others to

14    adopt, implement, enforce, and revise J&J's RPM Policy.

15        79.      At least the concerted action with distributors is per se illegal. In any event, the

16    concerted action has no legitimate business justification, but instead was undertaken to establish,

17    maintain, and increase prices and the market power of J&J and the ECPs. There is no efficiency-

18    enhancing, procompetitive justification. Any purported procompetitive justifications or effects

19    are completely outweighed by the anticompetitive impact, and there are less restrictive alternative

20    available to achieve any purported procompetitive effect.

21        80.      The concerted action has injured Costco, competition, and consumers, including

22    Costco members, through decreased competition, increased prices and administrative costs, and

23    reduced choice, quality, innovation, and output.

24        81.      Unless Costco's rights are declared and honored or the concerted action is

25    enjoined, competition, consumers, and Costco and its members will continue to be injured. There

26    is no adequate remedy at law. Costco is entitled to preliminary and permanent injunctive relief.

27    ///

28    ///

COMPLAINT
Case No.

**THIRD CAUSE OF ACTION**
**CALIFORNIA CARTWRIGHT ACT, CAL. BUS. & PROF. CODE § 16700 *ET SEQ.***

82.     Costco realleges each of the allegations above as if fully set forth in this claim.

83.     The challenged actions affect the sale of contact lenses in California, the sale of contact lenses intended for use or sale in California, and the sale of contact lenses to California consumers.

84.     J&J has engaged in vertical and horizontal price fixing in per se violation of California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *gv'ugs0*

85.     J&J has violated the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *gv" ugs0* by carrying out the acts set forth above in combination with ECPs, its distributors, and others for the purposes of:

    a.   Creating or carrying out restrictions in trade or commerce affecting the purchase and sale of contact lenses in the Contact Lens Markets;

    b.   Increasing the price of contact lenses purchased and sold in the Contact Lens Markets;

    c.   Preventing competition in the purchase and sale of contact lenses in the Contact Lens Markets;

    d.   Fixing, establishing, or controlling the price at which contact lenses intended for sale or use in California are sold to consumers in the Retail Contact Lens Markets; and

    e.   Making, entering into, executing, and carrying out contracts, obligations, and agreements by which the purchasers and sellers of contact lenses in the Contact Lens Markets, (i) bound themselves not to sell contact lenses below a common standard figure or fixed value, (ii) agreed to keep the price of contact lenses at a fixed or graduated figure, and (iii) established or settled the price of contact lenses sold to others so as to directly or indirectly preclude free and unrestricted competition.

/ / /

COMPLAINT
Case No.

86.     The concerted action has injured Costco, competition, and consumers, including Costco members, in California through decreased competition, increased prices and administrative costs, and reduced choice, quality, innovation, and output.

87.     Unless Costco's rights are declared and honored or the concerted action is enjoined, competition, consumers, and Costco and its members will continue to be injured.  There is no adequate remedy at law.  Costco is entitled to preliminary and permanent injunctive relief pursuant to Cal. Bus. & Prof. Code §§ 16750(a) and 16761.

## FOURTH CAUSE OF ACTION
## CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*

88.     Costco realleges each of the allegations above as if fully set forth in this claim.

89.     J&J has violated California's Unfair Competition Law, California Business and Professional Code § 17200 *et seq.*, in that its acts and practices detailed above were carried out in violation of the Federal Trade Commission Act, Sherman Act, and Cartwright Act, and are therefore unlawful.

90.     J&J has further engaged in unfair competition in violation of California's Unfair Competition Law, California Business and Professional Code § 17200 *et seq.*, in that its acts and practices undertaken to implement, enforce, and revise J&J's RPM Policy, detailed above, are unfair methods of competition.  In addition to the unfair acts and practices set forth above, it is unfair for a concentrated industry to adopt policies that effectively restrict retail price discounting in light of the ban on substitution and the central role ECPs play in dictating contact lens prescriptions and retail sales.

91.     The acts and practices set forth above, including the concerted action therein alleged, has injured Costco, competition, and consumers, including Costco members, in California through decreased competition, increased prices and administrative costs, and reduced choice, quality, innovation, and output.

92.     Unless Costco's rights are declared and honored or the concerted action is enjoined, competition, consumers, and Costco and its members will continue to be injured.  There

is no adequate remedy at law.  Costco is entitled to preliminary and permanent injunctive relief to prevent J&J's continued use of unlawful and unfair business practices.

### FIFTH CAUSE OF ACTION
### NEW YORK GENERAL BUSINESS LAW § 369(A) AND BREACH OF CONTRACT UNDER NEW YORK LAW

93.     Costco realleges each of the allegations above as if fully set forth in this claim.

94.     New York General Business Law § 369(a) prohibits the enforcement of agreements to fix minimum resale prices.  J&J's threats and demands are efforts to insert such minimum resale prices into the Agreement, or to enforce them if the Agreement is construed to include them, and are invalid.

95.     The challenged action has injured Costco, competition, and consumers, including Costco members, in New York through decreased competition, increased prices and administrative costs, and reduced choice, quality, innovation, and output.

96.     Unless Costco's rights are declared and honored or the concerted action is enjoined, competition, consumers, and Costco and its members will continue to be injured.  There is no adequate remedy at law.  Costco is entitled to preliminary and permanent injunctive relief.

### SIXTH CAUSE OF ACTION
### MARYLAND ANTITRUST ACT, MD. CODE ANN., COM. LAW § 11-201 *ET SEQ.*

97.     Costco realleges each of the allegations above as if fully set forth in this claim.

98.     The challenged actions affect the sale of contact lenses in Maryland, the sale of contact lenses intended for use or sale in Maryland, and the sale of contact lenses to Maryland consumers.

99.     J&J has engaged in an unreasonable restraint of trade through vertical and horizontal price fixing in per se violation of the Maryland Antitrust Act, Md. Code Ann., Commercial Law § 11-204.

100.    J&J has violated the Maryland Antitrust Act, Md. Code Ann., Commercial Law § 11-204 by carrying out the acts set forth above in conspiracy and combination with ECPs, its distributors, and others for the purposes of:

/ / /

-21-

COMPLAINT
Case No.

a.  Creating or carrying out unreasonable restrictions in trade or commerce affecting the purchase and sale of contact lenses in the Contact Lens Markets;

b.  Increasing the price of contact lenses purchased and sold in the Contact Lens Markets;

c.  Preventing and excluding competition in the purchase and sale of contact lenses in the Contact Lens Markets;

d.  Fixing, establishing, or controlling the price at which contact lenses intended for sale or use in Maryland are sold to consumers in the Retail Contact Lens Markets; and

e.  Making, entering into, executing, and carrying out contracts, obligations, and agreements by which the purchasers and sellers of contact lenses in the Contact Lens Markets, (i) bound themselves not to sell contact lenses below a common standard figure or fixed value, (ii) agreed to keep the price of contact lenses at a fixed or graduated figure, and (iii) established or settled the price of contact lenses sold to others so as to directly or indirectly preclude free and unrestricted competition.

101.   The concerted action has injured Costco, competition, and consumers, including Costco members, in Maryland through decreased competition, increased prices and administrative costs, and reduced choice, quality, innovation, and output.

102.   Unless Costco's rights are declared and honored or the concerted action is enjoined, competition, consumers, and Costco and its members will continue to be injured.  There is no adequate remedy at law.  Costco is entitled to preliminary and permanent injunctive relief pursuant to Maryland Antitrust Act, Md. Code Ann., Commercial Law § 11-209.

## VII.   REQUEST FOR RELIEF

Costco requests that the Court:

A.  Enter judgment for Costco against J&J on each of Costco's claims;

B.  Declare Costco's rights under the Agreement to purchase and resell J&J contact lenses regardless of Costco's decisions as to the prices at which it sells such contacts;

-22-

C.      Preliminarily and permanently enjoin J&J from implementing or enforcing an RPM Policy or any of its RPM agreements with respect to contact lenses;

D.      Preliminarily and permanently enjoin J&J from ceasing to deal with Costco, including in retaliation for bringing this lawsuit, and requiring J&J to restore competition;

E.      Find that the challenged actions are unlawful under Section 1 of the Sherman Act, Section 5 of the Federal Trade Commission Act, the California Cartwright Act, the California Unfair Competition Law, the New York General Business Law, and the Maryland Antitrust Act, and are in breach of the parties' Agreement;

F.      Award Costco damages in an amount to be determined;

G.      Award Costco the costs of the action, including reasonable attorneys' fees and costs, including expert witness fees and costs; and

H.      Grant such further relief as the Court deems just.


DATED:  March 2, 2015                              **PERKINS COIE** LLP


By: ___ s/ David P. Chiappetta _____
David P. Chiappetta, *State Bar No. 172099*
DChiappetta@perkinscoie.com
Mara Boundy, *State Bar No. 287109*
MBoundy@perkinscoie.com
Four Embarcadero Center, Suite 2400
San Francisco, California 94111
Telephone:  415.344.7000
Facsimile:  415.344.7050

David J. Burman, *Pro Hac Vice pending*
DBurman@perkinscoie.com
Shylah R. Alfonso, *Pro Hac Vice to be filed*
SAlfonso@perkinscoie.com
David S. Steele, *Pro Hac Vice to be filed*
DSteele@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff,
COSTCO WHOLESALE CORPORATION

-23-

## DEMAND FOR JURY TRIAL

Costco requests this case be tried to a jury on all issues triable by a jury.

DATED:  March 2, 2015

**PERKINS COIE LLP**

By:     _s/ David P. Chiappetta_
      David P. Chiappetta, *State Bar No. 172099*
      *DChiappetta@perkinscoie.com*
      Mara Boundy, *State Bar No. 287109*
      *MBoundy@perkinscoie.com*
      Four Embarcadero Center, Suite 2400
      San Francisco, California 94111
      Telephone:  415.344.7000
      Facsimile:  415.344.7050

      David J. Burman, *Pro Hac Vice pending*
      *DBurman@perkinscoie.com*
      Shylah R. Alfonso, *Pro Hac Vice to be filed*
      *SAlfonso@perkinscoie.com*
      David S. Steele, *Pro Hac Vice to be filed*
      *DSteele@perkinscoie.com*
      1201 Third Avenue, Suite 4900
      Seattle, Washington  98101-3099
      Telephone:  206.359.8000
      Facsimile:  206.359.9000

Attorneys for Plaintiff,
COSTCO WHOLESALE CORPORATION

-24-

# EXHIBIT A

## ACUVUE® Brand Contact Lenses
## Unilateral Price Policy

Effective July 1, 2014 the ACUVUE® OASYS® Brand Contact Lenses six-month supply pack (12 lenses per box) will be subject to a Unilateral Price Policy (UPP).  Effective August 1, 2014, the remaining family of products in the ACUVUE® OASYS® Brand, 1-DAY ACUVUE® TruEye® Brand Contact Lenses and 1-DAY ACUVUE® MOIST® Brand Contact Lenses will be subject to this same UPP.

The new Unilateral Pricing Policy will set a minimum price below which no reseller can advertise or sell a particular product. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

Under this policy, Johnson & Johnson Vision Care, Inc. (JJVCI) and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price listed below.

| PRODUCT | UPP PRICE | START DATE |
|---|---|---|
| ACUVUE® OASYS® Six-month supply pack (12 lenses per box) | $67.50 | 7/1/2014 |
| ACUVUE® OASYS® Annual supply pack (24 lenses per box) | $110.00 | 8/1/2014 |
| ACUVUE® OASYS® For Astigmatism Brand Contact Lenses | $40.00 | 8/1/2014 |
| ACUVUE® OASYS® For Presbyopia Brand Contact Lenses | $40.00 | 8/1/2014 |
| 1-DAY ACUVUE® TruEye® Brand Contact Lenses | $82.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand Contact Lenses (30 lenses per box) | $33.00 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand (90 lenses per box) | $63.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® for Astigmatism Brand Contact Lenses | $34.50 | 8/1/2014 |

Because an advertisement to "beat any price" logically commits a reseller to beat even a price that already is below the UPP Price, JJVCI will regard an advertisement promising to "beat any price" or using similar words to be an advertisement to sell for less than the UPP Price.

JJVCI will regard non-price discounts, such as coupons, gift cards, product giveaways and bundling as price discounting for purposes of determining whether a reseller has advertised or sold a product for less than the UPP Price.  For example, if a reseller advertised or sold a product at the UPP price and, in addition, offered a $5.00 gift card, JJVCI would regard that as a sale below the UPP Price.

This policy is unilateral and does not represent an agreement between JJVCI and its authorized distributors or resellers.    As such, this policy is non-negotiable and individual representatives are not authorized to alter, waive, modify or negotiate this policy.  Resellers are free to advertise and sell any UPP product at a price of their own choosing, however, violations will result in loss of product supply.

For further questions, please contact the number/email below.  Your JJVCI and distributor sales representatives will be unable to discuss this policy beyond reciting the policy and its supporting documents.

customerexperience@its.jnj.com, or dial 1.800.874.5278

## UPP Frequently Asked Questions

These Frequently Asked Questions (FAQs) are intended to clarify how JJVCI interprets its Unilateral Price Policy (UPP). Should you have a question that is not addressed here, or need further clarification on the policy, please contact: customerexperience@its.jnj.com or dial 1.800.874.5278.

In order to ensure that you receive accurate information regarding the UPP, JJVCI and distributor sales representatives will be unable to discuss the UPP beyond what is written here and will instead direct you to contact the email address or phone number listed above.

### General FAQs

1. Why is JJVCI adopting a UPP?
   a. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

2. To whom does the UPP apply?
   a. The UPP applies to any person or business selling or advertising JJVCI contact lenses to consumers within the US.

3. How frequently is the UPP updated?
   a. There are currently no specific plans to regularly update the UPP.  However, JJVCI reserves the right to modify the UPP at any time.  If a modification is made, you will receive 30 days' notice before the amended UPP takes effect.

4. Am I permitted to sell UPP products above or below the UPP price?
   a. You are free to sell product you have purchased at any price you choose.  However, if you sell product below the UPP price, JJVCI and its authorized distributors will refuse to accept new orders from you.  In addition, JJVCI will exercise its right to repurchase your current inventory of products subject to the UPP price.  If you sell product at or above the UPP price, JJVCI does not consider this to be a violation of the UPP.

### Policy FAQs

1. How does JJVCI determine if a UPP violation has occurred?
   a. A violation has occurred if the final per unit purchase price following all discounts and redeemed rebates (excluding JJVCI issued Professional Service Recovery Reimbursement offers), but prior to sales tax and shipping costs, is below the UPP price or if the advertised price is below the UPP price.  Shipping discounts or free shipping offers are permissible under this policy and are not counted against the final per unit purchase price.

2. Does the UPP apply to advertised prices as well?
   a. Yes, the UPP covers both the advertised price and the final sale price.

3. How do you define the advertised price?
   a. The advertised price point is the lowest per unit price point listed in store or in advertising materials.  These materials include, but are not limited to, website "As Low As" pricing, coupons, free standing inserts, website in-cart pricing, third party affiliate advertising, and mailers.

4. Are rebates or discounts permitted under this policy?
   a. Yes.  Rebates and discounts are permitted as long as the per unit purchase price after the rebate or discount is applied remains equal to or above the UPP price.
   For example, if you sell a box of 1-DAY ACUVUE® MOIST® for Astigmatism Brand with a 10% discount off of an original  price of $40.00, the final price to the customer would be $36.00.  This is above the UPP of $34.50 and would not violate the UPP. If you offered at 15% discount off of a $40.00 price, this would be a violation because the final price to the consumer would be $34.00
   *NOTE:*  Professional Service Recovery Reimbursement offers issued by JJVCI to refit patients following product discontinuations are excluded when calculating final per unit purchase price.

5. Is Co-Promotion or Co-Advertising with other items considered a violation?
   a. No. Co-Promotion or Co-Advertising with other items is allowed under this policy as long as the price applied to the JJCVI product(s) specifically stated on the receipt is not below the UPP Price, and the price on the other product(s) or service is not contingent upon the purchase of JJVCI UPP Products.

6. When are bundling discounts on UPP products considered to be a violation of the UPP?
   a. Bundling of UPP products with any other goods or service is considered a violation of the UPP if the bundled offer is contingent upon the purchase of JJVCI UPP Products, and the final price after subtracting the discount of the bundle is less than the UPP price.

7. How do Vision Insurance benefits / Health Care Plan reimbursements impact UPP Pricing?
   a. Vision Insurance benefits and/or Health Care Plan reimbursement is a payment method and not a price discount, and therefore is not considered in determining if a retail price violates the UPP.

8. What happens if I violate the UPP?
   a. Once JJVCI determines to its sole satisfaction that a violation of the UPP has occurred, JJVCI will send a warning letter (via FedEx with signature required) indicating the nature of the violation.  If you fail to correct the pricing within 7 days of receiving the letter (or at any time thereafter), JJVCI will cease to supply UPP products to your account.

9. Will a discontinuation of product shipments apply to all JJVCI products?
   a. No.  JJVCI will only stop shipping products covered by the UPP.  All non-UPP JJVCI products will continue to ship.

10. What if my violation was unintentional or due to a misunderstanding of the UPP?
   a. You are responsible for the accuracy of your pricing, understanding and complying with this policy.  JJVCI will determine to its sole satisfaction whether a violation has occurred.

**CONFIDENTIAL**: This pricing information is confidential and intended only for the eye care professional office receiving this letter.
It is subject to any existing confidentiality provisions you have agreed to with Johnson & Johnson Vision Care, Inc or your distributor.
It may not be shared with third parties outside of your office.

ACUVUE® Brand Contact Lenses are indicated for vision correction. As with any contact lens, eye problems, including corneal ulcers, can develop. Some wearers may experience mild irritation, itching or discomfort. Lenses should not be prescribed if patients have any eye infection, or experience eye discomfort, excessive tearing, vision changes, redness or other eye problems. Consult the package insert for complete information. Complete information is also available from VISTAKON® Division of Johnson & Johnson Vision Care, Inc., by calling 1-800-843-2020 or by visiting acuvueprofessional.com.
ACUVUE®, ACUVUE® ADVANCE®, MOIST®, TrueEye®, ACUVUE® 2®, ACUVUE® OASYS®, and VISTAKON® are trademarks of Johnson & Johnson Vision Care, Inc.

The third-party trademarks used herein are owned by their respective companies.

© Johnson & Johnson Vision Care, Inc. 2014 March 2014



# EXHIBIT B

## ACUVUE® Brand Contact Lenses
## Unilateral Price Policy

Effective July 1, 2014 the ACUVUE® OASYS® Brand Contact Lenses six-month supply pack (12 lenses per box) will be subject to a Unilateral Price Policy (UPP). Effective August 1, 2014, the remaining family of products in the ACUVUE® OASYS® Brand, 1-DAY ACUVUE® TruEye® Brand Contact Lenses and 1-DAY ACUVUE® MOIST® Brand Contact Lenses will be subject to this same UPP.

The new Unilateral Pricing Policy will set a minimum price below which no reseller can advertise or sell a particular product. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

Under this policy, Johnson & Johnson Vision Care, Inc. (JJVCI) and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price listed below.

| PRODUCT | UPP PRICE | START DATE |
|---|---|---|
| ACUVUE® OASYS® Six-month supply pack (12 lenses per box) | $67.50 | 7/1/2014 |
| ACUVUE® OASYS® Annual supply pack (24 lenses per box) | $110.00 | 8/1/2014 |
| ACUVUE® OASYS® For Astigmatism Brand Contact Lenses | $40.00 | 8/1/2014 |
| ACUVUE® OASYS® For Presbyopia Brand Contact Lenses | $40.00 | 8/1/2014 |
| 1-DAY ACUVUE® TruEye® Brand Contact Lenses | $82.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand Contact Lenses (30 lenses per box) | $33.00 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand (90 lenses per box) | $63.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® for Astigmatism Brand Contact Lenses | $34.50 | 8/1/2014 |

Because an advertisement to "beat any price" logically commits a reseller to beat even a price that already is below the UPP Price, JJVCI will regard an advertisement promising to "beat any price" or using similar words to be an advertisement to sell for less than the UPP Price.

JJVCI will regard non-price discounts, such as coupons, gift cards, product giveaways and bundling as price discounting for purposes of determining whether a reseller has advertised or sold a product for less than the UPP Price. For example, if a reseller advertised or sold a product at the UPP price and, in addition, offered a $5.00 gift card, JJVCI would regard that as a sale below the UPP Price.

This policy is unilateral and does not represent an agreement between JJVCI and its authorized distributors or resellers. As such, this policy is non-negotiable and individual representatives are not authorized to alter, waive, modify or negotiate this policy. Resellers are free to advertise and sell any UPP product at a price of their own choosing, however, violations will result in loss of product supply.

For further questions, please contact the number/email below. Your JJVCI and distributor sales representatives will be unable to discuss this policy beyond reciting the policy and its supporting documents.

customerexperience@its.jnj.com, or dial 1.800.874.5278

Revised: 6/16/14

## UPP Frequently Asked Questions

These Frequently Asked Questions (FAQs) are intended to clarify how JJVCI interprets its Unilateral Price Policy (UPP). Should you have a question that is not addressed here, or need further clarification on the policy, please contact: customerexperience@its.jnj.com or dial 1.800.874.5278.

In order to ensure that you receive accurate information regarding the UPP, JJVCI and distributor sales representatives will be unable to discuss the UPP beyond what is written here and will instead direct you to contact the email address or phone number listed above.

**General FAQs**

1. Why is JJVCI adopting a UPP?
   a. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

2. To whom does the UPP apply?
   a. The UPP applies to any person or business selling or advertising JJVCI contact lenses to consumers within the US.

3. How frequently is the UPP updated?
   a. There are currently no specific plans to regularly update the UPP. However, JJVCI reserves the right to modify the UPP at any time. If a modification is made, you will receive 30 days' notice before the amended UPP takes effect.

4. Am I permitted to sell UPP products above or below the UPP price?
   a. You are free to sell product you have purchased at any price you choose. However, if you sell product below the UPP price, JJVCI and its authorized distributors will refuse to accept new orders from you. In addition, JJVCI will exercise its right to repurchase your current inventory of products subject to the UPP price. If you sell product at or above the UPP price, JJVCI does not consider this to be a violation of the UPP.

**Policy FAQs**

1. How does JJVCI determine if a UPP violation has occurred?
   a. A violation has occurred if the final per unit purchase price following all discounts and redeemed rebates (excluding JJVCI issued Professional Service Recovery Reimbursement offers), but prior to sales tax and shipping costs, is below the UPP price or if the advertised price is below the UPP price. Shipping discounts or free shipping offers are permissible under this policy and are not counted against the final per unit purchase price.

2. Does the UPP apply to advertised prices as well?
   a. Yes, the UPP covers both the advertised price and the final sale price.

3. How do you define the advertised price?
   a. The advertised price point is the lowest per unit price point listed in store or in advertising materials. These materials include, but are not limited to, website "As Low As" pricing, coupons, free standing inserts, website in-cart pricing, third party affiliate advertising, and mailers.

4. Are rebates or discounts permitted under this policy?
   a. Yes. Rebates and discounts are permitted as long as the per unit purchase price after the rebate or discount is applied remains equal to or above the UPP price.
   For example, if you sell a box of 1-DAY ACUVUE® MOIST® for Astigmatism Brand with a 10% discount off of an original price of $40.00, the final price to the customer would be $36.00. This is above the UPP of $34.50 and would not violate the UPP. If you offered at 15% discount off of a $40.00 price, this would be a violation because the final price to the consumer would be $34.00
   NOTE: Professional Service Recovery Reimbursement offers issued by JJVCI to refit patients following product discontinuations are excluded when calculating final per unit purchase price.

5. Is Co-Promotion or Co-Advertising with other items considered a violation?
   a. No. Co-Promotion or Co-Advertising with other items is allowed under this policy as long as the price applied to the JJCVI product(s) specifically stated on the receipt is not below the UPP Price, and the price on the other product(s) or service is not contingent upon the purchase of JJVCI UPP Products.

6. Is "Bundling" allowed with Acuvue Brand Contact Lens UPP Products?

Bundling an Acuvue Brand Contact Lens UPP Product with another product or service is allowed if all of the following conditions are met:

    a. The price of the UPP product remains equal to or above the UPP price after subtracting the total bundle savings value. *The total bundle savings value is the sum of the discounts on all products and services included in the bundled offer.*

    b. The bundled offer explicitly states the total bundle savings value. *If the offer includes a fixed percentage discount, the total bundled savings value for the offer must be capped at an amount that would not violate the UPP, and this cap must be explicitly stated.*

    c. The price of the UPP product is clearly stated on the customer receipt.

    d. All bundled products and services must be purchased, and their associated discounts redeemed, at the time of sale of the UPP product.

    e. The bundled offer cannot include "free" products or services.

7. How do Vision Insurance benefits / Health Care Plan reimbursements impact UPP Pricing?

    a. Vision Insurance benefits and/or Health Care Plan reimbursement is a payment method and not a price discount, and therefore is not considered in determining if a retail price violates the UPP.

8. What happens if I violate the UPP?

    a. Once JJVCI determines to its sole satisfaction that a violation of the UPP has occurred, JJVCI will send a warning letter (via FedEx with signature required) indicating the nature of the violation. If you fail to correct the pricing within 7 days of receiving the letter (or at any time thereafter), JJVCI will cease to supply UPP products to your account.

9. Will a discontinuation of product shipments apply to all JJVCI products?

    a. No. JJVCI will only stop shipping products covered by the UPP. All non-UPP JJVCI products will continue to ship.

10. What if my violation was unintentional or due to a misunderstanding of the UPP?

    a. You are responsible for the accuracy of your pricing, understanding and complying with this policy. JJVCI will determine to its sole satisfaction whether a violation has occurred.

Revised: 6/16/14

**CONFIDENTIAL**: This pricing information is confidential and intended only for the eye care professional office receiving this letter. It is subject to any existing confidentiality provisions you have agreed to with Johnson & Johnson Vision Care, Inc or your distributor. It may not be shared with third parties outside of your office.

ACUVUE® Brand Contact Lenses are indicated for vision correction. As with any contact lens, eye problems, including corneal ulcers, can develop. Some wearers may experience mild irritation, itching or discomfort. Lenses should not be prescribed if patients have any eye infection, or experience eye discomfort, excessive tearing, vision changes, redness or other eye problems. Consult the package insert for complete information. Complete information is also available from VISTAKON® Division of Johnson & Johnson Vision Care, Inc., by calling 1-800-843-2020 or by visiting acuvueprofessional.com.
ACUVUE®, ACUVUE® ADVANCE®, MOIST®, TrueEye®, ACUVUE® 2®, ACUVUE® OASYS®, and VISTAKON® are trademarks of Johnson & Johnson Vision Care, Inc.

The third-party trademarks used herein are owned by their respective companies.

© Johnson & Johnson Vision Care, Inc. 2014 March 2014



INNOVATION FOR HEALTHY VISION™

# EXHIBIT C

# ACUVUE® Brand Contact Lenses
# Unilateral Price Policy

Effective July 1, 2014, Johnson & Johnson Vision Care, Inc. (JJVCI) began to implement a Unilateral Price Policy (UPP) on many of our ACUVUE® Brand Contacts, starting with the ACUVUE® OASYS® Brand Contact Lenses six-month supply pack (12 lenses per box). The policy was expanded to include the ACUVUE® OASYS® Annual supply pack (24 lenses per box), 1-DAY ACUVUE® TruEye® Brand Contact Lenses and 1-DAY ACUVUE® MOIST® Contact Lenses on August 1, 2014. Effective October 1, 2014, the UPP will be expanded to include the ACUVUE® OASYS® 6-pack.

The UPP establishes a minimum price below which no reseller can advertise or sell a particular product. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

Under this policy, Johnson & Johnson Vision Care, Inc. (JJVCI) and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price listed below.

This policy is unilateral and does not represent an agreement between JJVCI and its authorized distributors or resellers. As such, this policy is non-negotiable and individual representatives are not authorized to alter, waive, modify or negotiate this policy. Resellers are free to advertise and sell any UPP product at a price of their own choosing, however, violations will result in loss of product supply.

| PRODUCT | UPP Price | Start Date |
|---|---|---|
| ACUVUE® OASYS® Brand Contact Lenses (6 lenses per box) | $34.00 | 10/1/2014 |
| ACUVUE® OASYS® Six-month supply pack (12 lenses per box) | $67.50 | 7/1/2014 |
| ACUVUE® OASYS® Annual supply pack (24 lenses per box) | $110.00 | 8/1/2014 |
| ACUVUE® OASYS® For Astigmatism Brand Contact Lenses | $40.00 | 8/1/2014 |
| ACUVUE® OASYS® For Presbyopia Brand Contact Lenses | $40.00 | 8/1/2014 |
| 1-DAY ACUVUE® TruEye® Brand Contact Lenses | $82.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand Contact Lenses (30 lenses per box) | $33.00 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand (90 lenses per box) | $63.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® for Astigmatism Brand Contact Lenses | $34.50 | 8/1/2014 |

Because an advertisement to "beat any price" logically commits a reseller to beat even a price that already is below the UPP Price, JJVCI will regard an advertisement promising to "beat any price" or using similar words to be an advertisement to sell for less than the UPP Price.

For further questions, please contact the number/email below. Your JJVCI and distributor sales representatives will be unable to discuss this policy beyond reciting the policy and its supporting documents.

acuvuepricepolicy@its.jnj.com, or dial 1.904.443.3824

Revised: 8/7/14

## UPP Frequently Asked Questions

These Frequently Asked Questions (FAQs) are intended to clarify how JJVCI interprets its Unilateral Price Policy (UPP). Should you have a question that is not addressed here, or need further clarification on the policy, please contact: acuvuepricepolicy@its.jnj.com or dial 1.904.443.3824.

In order to ensure that you receive accurate information regarding the UPP, JJVCI and distributor sales representatives will be unable to discuss the UPP beyond what is written here and will instead direct you to contact the email address or phone number listed above.

### General FAQs

1. **Why is JJVCI adopting a UPP?**

   a. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

2. **To whom does the UPP apply?**

   a. The UPP applies to any person or business selling or advertising JJVCI contact lenses to consumers within the US.

3. **How frequently is the UPP updated?**

   a. There are currently no specific plans to regularly update the UPP. However, JJVCI reserves the right to modify the UPP at any time. If a modification is made, you will receive 30 days' notice before the amended UPP takes effect.

4. **Am I permitted to sell UPP products above or below the UPP price?**

   a. You are free to sell product you have purchased at any price you choose. However, if you sell product below the UPP price, JJVCI and its authorized distributors will refuse to accept new orders from you. In addition, JJVCI will exercise its right to repurchase your current inventory of products subject to the UPP price. If you sell product at or above the UPP price, JJVCI does not consider this to be a violation of the UPP.

### Policy FAQs

1. **How does JJVCI determine if a UPP violation has occurred?**

   a. A violation has occurred if the final per unit purchase price following all discounts and redeemed rebates (excluding JJVCI issued Professional Service Recovery Reimbursement offers), but prior to sales tax and shipping costs, is below the UPP price or if the advertised price is below the UPP price. Shipping discounts or free shipping offers are permissible under this policy and are not counted against the final per unit purchase price.

2. **Does the UPP apply to advertised prices as well?**

   a. Yes, the UPP covers both the advertised price and the final sale price.

3. **How do you define the advertised price?**

   a. The advertised price point is the lowest per unit price point listed in store or in advertising materials. These materials include, but are not limited to, website "As Low As" pricing, coupons, free standing inserts, website in-cart pricing, third party affiliate advertising, and mailers.

4. **Are rebates or discounts permitted under this policy?**

   a. Yes. Rebates and discounts are permitted as long as the per unit purchase price after the rebate or discount is applied remains equal to or above the UPP price.
   For example, if you sell a box of 1-DAY ACUVUE® MOIST® for Astigmatism Brand with a 10% discount off of an original price of $40.00, the final price to the customer would be $36.00. This is above the UPP of $34.50 and would not violate the UPP.
   If you offered at 15% discount off of a $40.00 price, this would be a violation because the final price to the consumer would be $34.00

*NOTE*: Professional Service Recovery Reimbursement offers issued by JJVCI to refit patients following product discontinuations are excluded when calculating final per unit purchase price.

### 5. Is Co-Advertising with other items considered a violation?

a. No. Co-Advertising with other items is allowed under this policy as long as the price applied to the JJVCI product(s) specifically stated on the receipt is not below the UPP price, and the price on the other product(s) or service is not contingent upon the purchase of JJVCI UPP products.

### 6. Are "Combined product discounts" allowed with ACUVUE® Brand Contact Lens UPP products? *For example: buy an annual supply of ACUVUE® OASYS® Brand Contact Lenses and get 20% off any pair of glasses.*

a. Yes, these types of offers are permitted when an annual supply is purchased and the following conditions are met. (see question #8 for combined product discounts with less than an annual supply of contacts)

   i. The discount is only applied to the non-UPP products in the offer and the price of the ACUVUE® product is equal to or above its UPP price.

   ii. The price of the ACUVUE® product is clearly stated in any advertising and on the receipt.

   iii. The offer contains only optical products, but not other contact lenses.

   iv. All items and discounts included in the offer must be part of the same transaction.

   v. For offers that include in-store or in-office credits, see question #7 below.

### 7. Can I create a combined product discount that includes in-store or in-office credit? *For example: buy an annual supply and receive $50 in-store credit?*

In-store and in-office credits includes: gift cards, account credits, store credits, promotional code or offer code credits. *Any customer incentives redeemable outside of the purchase location, such as pre-paid VISA or American Express cards, are not permitted.*

a. Yes, offers that include in-store or in-office credit are permitted when an annual supply is purchased and the following conditions are met:

   i. The value of the credit does not exceed $50.

   ii. The offer cannot be combined with any other offer.

   iii. The price of the ACUVUE® product is equal to or above its UPP price.

   iv. The price of the ACUVUE® product is clearly stated in any advertising and on the receipt.

   v. The credit can only be used for future product purchases.

### 8. Can I create a combined product discount when less than an annual supply is purchased?

a. Yes, these types of offers are permitted if all of the following conditions are met:

   i. The price of the UPP product remains equal to or above the UPP price after subtracting the total savings value. *The total savings value is the sum of the discounts on all products and services included in the offer.*

   ii. The offer explicitly states the total savings value. *If the offer includes a fixed percentage discount, the total savings value for the offer must be capped at an amount that would not violate the UPP and this cap must be explicitly stated.*

   iii. The price of the UPP product is clearly stated on the customer receipt.

   iv. All items and discounts included in the offer must be part of the same transaction.

   v. The offer cannot include "free" products or services.

### 9. How are Vision Insurance Benefits / Health Care Plans offered by Managed Care Organizations (MCO) or Managed Vision Care Companies (MVCC) viewed under the UPP?

a. Reimbursements, discounts, and allowances offered by MCOs or MVCCs are exempt from the UPP.

**10. Plans from what types of Managed Care Organizations (MCO) or Managed Vision Care Companies (MVCC) are exempted from the UPP?**

    a.  MCOs and MVCCs must meet the following criteria for their plans to be exempt:

        i.  Provide medical device (and/or durable medical equipment reimbursement programs) and vision care professional service reimbursement programs for individuals enrolled in plans.

        ii.  Provide vision reimbursement programs for its members for each such plan that may include reimbursement and discounts contractually for contact lenses.

        iii.  Is an insurer or other risk bearing entity registered with the State Insurance Commissioner's Office or Regulatory Body in each state, district or U.S. Territory who provides coverage. Coverage is any benefit outlined in the respective MCO / MVCC plan document.

    b.  For a comprehensive list of US insurers, please contact acuvuepricepolicy@its.jnj.com.

**11. Are employee discounts permitted under the UPP?**

    a.  Employee discounts on UPP products are exempt from the UPP, provided that these prices are not advertised or offered to the general public.

**12. Are military discounts permitted under the UPP?**

    a.  Military discounts offered to both active duty and retired military personnel are exempt from the Unilateral Price Policy and are not included when determining final price after discounts. Any advertising of UPP products cannot include or make reference to military discounts and all prices conveyed in the advertising must be equal to or above the UPP price.

**13. What happens if I violate the UPP?**

    a.  Once JJVCI has to reason to believe that a violation of the UPP has occurred, JJVCI will send a notice (via FedEx with signature required) indicating the nature of the violation. If JJVCI determines that a violation has in fact occurred, it will cease to supply UPP products to your account for a period of 12 months.

**14. Will a discontinuation of product shipments apply to all JJVCI products?**

    a.  No. JJVCI will only stop shipping products covered by the UPP. All non-UPP JJVCI products will continue to ship.

**15. What if my violation was unintentional or due to a misunderstanding of the UPP?**

    a.  You are responsible for the accuracy of your pricing, understanding and complying with this policy. JJVCI will determine to its sole satisfaction whether a violation has occurred.

**CONFIDENTIAL:** This pricing information is confidential and intended only for the eye care professional office receiving this letter. It is subject to any existing confidentiality provisions you have agreed to with Johnson & Johnson Vision Care, Inc or your distributor. It may not be shared with third parties outside of your office.

ACUVUE® Brand Contact Lenses are indicated for vision correction. As with any contact lens, eye problems, including corneal ulcers, can develop. Some wearers may experience mild irritation, itching or discomfort. Lenses should not be prescribed if patients have any eye infection, or experience eye discomfort, excessive tearing, vision changes, redness or other eye problems. Consult the package insert for complete information. Complete information is also available from VISTAKON® Division of Johnson & Johnson Vision Care, Inc., by calling 1-800-843-2020 or by visiting acuvueprofessional.com. ACUVUE®, ACUVUE® ADVANCE®, MOIST®, TrueEye®, ACUVUE® 2®, ACUVUE® OASYS®, and VISTAKON® are trademarks of Johnson & Johnson Vision Care, Inc.

The third-party trademarks used herein are owned by their respective companies.

© Johnson & Johnson Vision Care, Inc. 2014 August 2014



# EXHIBIT D

# ACUVUE® Brand Contact Lenses
# Unilateral Price Policy

Effective July 1, 2014, Johnson & Johnson Vision Care, Inc. (JJVCI) began to implement a Unilateral Price Policy (UPP) on many of our ACUVUE® Brand Contacts, starting with the ACUVUE® OASYS® Brand Contact Lenses six-month supply pack (12 lenses per box). The policy was expanded to include the ACUVUE® OASYS® Annual supply pack (24 lenses per box), 1-DAY ACUVUE® TruEye® Brand Contact Lenses and 1-DAY ACUVUE® MOIST® Contact Lenses on August 1, 2014. Effective October 1, 2014, the UPP will be expanded to include the ACUVUE® OASYS® 6-pack.

The UPP establishes a minimum price below which no reseller can advertise or sell a particular product. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

Under this policy, Johnson & Johnson Vision Care, Inc. (JJVCI) and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price listed below.

This policy is unilateral and does not represent an agreement between JJVCI and its authorized distributors or resellers. As such, this policy is non-negotiable and individual representatives are not authorized to alter, waive, modify or negotiate this policy. Resellers are free to advertise and sell any UPP product at a price of their own choosing, however, violations will result in loss of product supply.

| PRODUCT | UPP Price | Start Date |
|---|---|---|
| ACUVUE® OASYS® Brand Contact Lenses (6 lenses per box) | $34.00 | 10/1/2014 |
| ACUVUE® OASYS® Six-month supply pack (12 lenses per box) | $67.50 | 7/1/2014 |
| ACUVUE® OASYS® Annual supply pack (24 lenses per box) | $110.00 | 8/1/2014 |
| ACUVUE® OASYS® For Astigmatism Brand Contact Lenses | $40.00 | 8/1/2014 |
| ACUVUE® OASYS® For Presbyopia Brand Contact Lenses | $40.00 | 8/1/2014 |
| 1-DAY ACUVUE® TruEye® Brand Contact Lenses | $82.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand Contact Lenses (30 lenses per box) | $33.00 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand (90 lenses per box) | $63.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® for Astigmatism Brand Contact Lenses | $34.50 | 8/1/2014 |

Because an advertisement to "beat any price" logically commits a reseller to beat even a price that already is below the UPP Price, JJVCI will regard an advertisement promising to "beat any price" or using similar words to be an advertisement to sell for less than the UPP Price.

For further questions, please contact the number/email below. Your JJVCI and distributor sales representatives will be unable to discuss this policy beyond reciting the policy and its supporting documents.

acuvuepricepolicy@its.jnj.com, or dial 1.904.443.3824

Revised: 8/7/14

## UPP Frequently Asked Questions

These Frequently Asked Questions (FAQs) are intended to clarify how JJVCI interprets its Unilateral Price Policy (UPP). Should you have a question that is not addressed here, or need further clarification on the policy, please contact: acuvuepricepolicy@its.jnj.com or dial 1.904.443.3824.

In order to ensure that you receive accurate information regarding the UPP, JJVCI and distributor sales representatives will be unable to discuss the UPP beyond what is written here and will instead direct you to contact the email address or phone number listed above.

### General FAQs

1. **Why is JJVCI adopting a UPP?**

   a. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

2. **To whom does the UPP apply?**

   a. The UPP applies to any person or business selling or advertising JJVCI contact lenses to consumers within the US.

3. **How frequently is the UPP updated?**

   a. There are currently no specific plans to regularly update the UPP. However, JJVCI reserves the right to modify the UPP at any time. If a modification is made, you will receive 30 days' notice before the amended UPP takes effect.

4. **Am I permitted to sell UPP products above or below the UPP price?**

   a. You are free to sell product you have purchased at any price you choose. However, if you sell product below the UPP price, JJVCI and its authorized distributors will refuse to accept new orders from you. In addition, JJVCI will exercise its right to repurchase your current inventory of products subject to the UPP price. If you sell product at or above the UPP price, JJVCI does not consider this to be a violation of the UPP.

### Policy FAQs

1. **How does JJVCI determine if a UPP violation has occurred?**

   a. A violation has occurred if the final per unit purchase price following all discounts and redeemed rebates (excluding JJVCI issued Professional Service Recovery Reimbursement offers), but prior to sales tax and shipping costs, is below the UPP price or if the advertised price is below the UPP price. Shipping discounts or free shipping offers are permissible under this policy and are not counted against the final per unit purchase price.

2. **Does the UPP apply to advertised prices as well?**

   a. Yes, the UPP covers both the advertised price and the final sale price.

3. **How do you define the advertised price?**

   a. The advertised price point is the lowest per unit price point listed in store or in advertising materials. These materials include, but are not limited to, website "As Low As" pricing, coupons, free standing inserts, website in-cart pricing, third party affiliate advertising, and mailers.

4. **Are rebates or discounts permitted under this policy?**

   a. Yes. Rebates and discounts are permitted as long as the per unit purchase price after the rebate or discount is applied remains equal to or above the UPP price.
   For example, if you sell a box of 1-DAY ACUVUE® MOIST® for Astigmatism Brand with a 10% discount off of an original price of $40.00, the final price to the customer would be $36.00. This is above the UPP of $34.50 and would not violate the UPP.
   If you offered at 15% discount off of a $40.00 price, this would be a violation because the final price to the consumer would be $34.00

*NOTE*: Professional Service Recovery Reimbursement offers issued by JJVCI to refit patients following product discontinuations are excluded when calculating final per unit purchase price.

**5.  Is Co-Advertising with other items considered a violation?**

a.  No. Co-Advertising with other items is allowed under this policy as long as the price applied to the JJVCI product(s) specifically stated on the receipt is not below the UPP price, and the price on the other product(s) or service is not contingent upon the purchase of JJVCI UPP products.

**6.  Are "Combined product discounts" allowed with ACUVUE® Brand Contact Lens UPP products?** *For example: buy an annual supply of ACUVUE® OASYS® Brand Contact Lenses and get 20% off any pair of glasses.*

a.  Yes, these types of offers are permitted when an annual supply is purchased and the following conditions are met. (see question #8 for combined product discounts with less than an annual supply of contacts)

 i.  The discount is only applied to the non-UPP products in the offer and the price of the ACUVUE® product is equal to or above its UPP price.

 ii.  The price of the ACUVUE® product is clearly stated in any advertising and on the receipt.

 iii.  The offer contains only optical products, but not other contact lenses.

 iv.  All items and discounts included in the offer must be part of the same transaction.

 v.  For offers that include in-store or in-office credits, see question #7 below.

**7.  Can I create a combined product discount that includes in-store or in-office credit?** *For example: buy an annual supply and receive $50 in-store credit?*

In-store and in-office credits includes: gift cards, account credits, store credits, promotional code or offer code credits. *Any customer incentives redeemable outside of the purchase location, such as pre-paid VISA or American Express cards, are not permitted.*

a.  Yes, offers that include in-store or in-office credit are permitted when an annual supply is purchased and the following conditions are met:

 i.  The value of the credit does not exceed $50.

 ii.  The offer cannot be combined with any other offer.

 iii.  The price of the ACUVUE® product is equal to or above its UPP price.

 iv.  The price of the ACUVUE® product is clearly stated in any advertising and on the receipt.

 v.  The in-store or in-office credit cannot be advertised externally.

 vi.  The credit can only be used for future product purchases.

**8.  Can I create a combined product discount when less than an annual supply is purchased?**

a.  Yes, these types of offers are permitted if all of the following conditions are met:

 i.  The price of the UPP product remains equal to or above the UPP price after subtracting the total savings value. *The total savings value is the sum of the discounts on all products and services included in the offer.*

 ii.  The offer explicitly states the total savings value. *If the offer includes a fixed percentage discount, the total savings value for the offer must be capped at an amount that would not violate the UPP and this cap must be explicitly stated.*

 iii.  The price of the UPP product is clearly stated on the customer receipt.

 iv.  All items and discounts included in the offer must be part of the same transaction.

 v.  The offer cannot include "free" products or services.

**9.  How are Vision Insurance Benefits / Health Care Plans offered by Managed Care Organizations (MCO) or Managed Vision Care Companies (MVCC) viewed under the UPP?**

a.  Reimbursements, discounts, and allowances offered by MCOs or MVCCs are exempt from the UPP.

**10. Plans from what types of Managed Care Organizations (MCO) or Managed Vision Care Companies (MVCC) are exempted from the UPP?**

   a.  MCOs and MVCCs must meet the following criteria for their plans to be exempt:

      i.  Provide medical device (and/or durable medical equipment reimbursement programs) and vision care professional service reimbursement programs for individuals enrolled in plans.

      ii.  Provide vision reimbursement programs for its members for each such plan that may include reimbursement and discounts contractually for contact lenses.

      iii.  Is an insurer or other risk bearing entity registered with the State Insurance Commissioner's Office or Regulatory Body in each state, district or U.S. Territory who provides coverage. Coverage is any benefit outlined in the respective MCO / MVCC plan document.

   b.  For a comprehensive list of US insurers, please contact acuvuepricepolicy@its.jnj.com.

**11.  Are employee discounts permitted under the UPP?**

   a.  Employee discounts on UPP products are exempt from the UPP, provided that these prices are not advertised or offered to the general public.

**12. Are military discounts permitted under the UPP?**

   a.  Military discounts offered to both active duty and retired military personnel are exempt from the Unilateral Price Policy and are not included when determining final price after discounts. Any advertising of UPP products cannot include or make reference to military discounts and all prices conveyed in the advertising must be equal to or above the UPP price.

**13. What happens if I violate the UPP?**

   a.  Once JJVCI has to reason to believe that a violation of the UPP has occurred, JJVCI will send a notice (via FedEx with signature required) indicating the nature of the violation. If JJVCI determines that you are in fact in violation of the UPP, JJVCI will cease to supply UPP products to your account for a period of 12 months.

**14. Will a discontinuation of product shipments apply to all JJVCI products?**

   a.  No. JJVCI will only stop shipping products covered by the UPP. All non-UPP JJVCI products will continue to ship.

**15. What if my violation was unintentional or due to a misunderstanding of the UPP?**

   a.  You are responsible for the accuracy of your pricing, understanding and complying with this policy. JJVCI will determine to its sole satisfaction whether a violation has occurred.

**CONFIDENTIAL:** This pricing information is confidential and intended only for the eye care professional office receiving this letter. It is subject to any existing confidentiality provisions you have agreed to with Johnson & Johnson Vision Care, Inc or your distributor. It may not be shared with third parties outside of your office.

ACUVUE® Brand Contact Lenses are indicated for vision correction. As with any contact lens, eye problems, including corneal ulcers, can develop. Some wearers may experience mild irritation, itching or discomfort. Lenses should not be prescribed if patients have any eye infection, or experience eye discomfort, excessive tearing, vision changes, redness or other eye problems. Consult the package insert for complete information. Complete information is also available from VISTAKON® Division of Johnson & Johnson Vision Care, Inc., by calling 1-800-843-2020 or by visiting acuvueprofessional.com. ACUVUE®, ACUVUE® ADVANCE®, MOIST®, TrueEye®, ACUVUE® 2®, ACUVUE® OASYS®, and VISTAKON® are trademarks of Johnson & Johnson Vision Care, Inc.

The third-party trademarks used herein are owned by their respective companies.

© Johnson & Johnson Vision Care, Inc. 2014 August 2014



# EXHIBIT E

## ACUVUE® Brand Contact Lenses
## Unilateral Price Policy -- Club Store Retailer Amendment

Effective October 2014, Johnson & Johnson Vision Care, Inc. (JJVCI) is amending the ACUVUE® Brand Contact Lenses Unilateral Pricing Policy (UPP) to permit combined product discounts that include an offer of in-store credit when less than an annual supply is purchased. This exception is limited to club store retailers, which are membership-only warehouse clubs requiring payment of an annual membership fee for the opportunity to purchase a wide selection of optical and non-optical merchandise and prohibiting non-members from shopping at their locations.

An example of this type of offer is: Buy two boxes of ACUVUE® OASYS® Six-month supply pack (12 lenses per box) and get a $10 store gift card. These types of offers are now permitted when the following conditions are met:

a.  The value of the in-store credit does not exceed 10% of the amount spent on the contacts.

b.  The offer cannot be combined with any other offer.

c.  The price of the ACUVUE® product is equal to or above its UPP price.

d.  The price of the ACUVUE® product is clearly stated in any advertising and on the receipt.

e.  The in-store credit can only be advertised through displays and communications occurring within the store and cannot be advertised externally. External advertising includes flyers, mailers, internet, prices quoted over the phone, etc.

f.  The credit can only be used for future purchases.

g.  The in-store credit cannot be used towards the purchase of contact lenses.

h.  Any customer incentives redeemable outside of the purchase location, such as pre-paid VISA or American Express cards, are not permitted.

Please see UPP FAQ #11 for limitations when creating a combined product discount that includes in-store credit and an annual supply of contacts.

Under the UPP, JJVCI and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price.

The UPP is unilateral and does not represent an agreement between JJVCI and its authorized distributors or resellers. As such, the UPP is non-negotiable and individual representatives are not authorized to alter, waive, modify or negotiate the UPP. Resellers are free to advertise and sell any UPP product at a price of their own choosing, however, violations will result in loss of product supply.

For further questions regarding the UPP, please contact the email or number below.

acuvuepricepolicy@its.jnj.com, or dial 1.904.443.3824

**CONFIDENTIAL:** This pricing information is confidential and intended only for the eye care professional office receiving this letter. It is subject to any existing confidentiality provisions you have agreed to with Johnson & Johnson Vision Care, Inc or your distributor. It may not be shared with third parties outside of your office.

ACUVUE® Brand Contact Lenses are indicated for vision correction. As with any contact lens, eye problems, including corneal ulcers, can develop. Some wearers may experience mild irritation, itching or discomfort. Lenses should not be prescribed if patients have any eye infection, or experience eye discomfort, excessive tearing, vision changes, redness or other eye problems. Consult the package insert for complete information. Complete information is also available from VISTAKON® Division of Johnson & Johnson Vision Care, Inc., by calling 1-800-843-2020 or by visiting acuvueprofessional.com. ACUVUE®, ACUVUE® ADVANCE®, MOIST®, TrueEye®, ACUVUE® 2®, ACUVUE® OASYS®, and VISTAKON® are trademarks of Johnson & Johnson Vision Care, Inc.

The third-party trademarks used herein are owned by their respective companies.

© Johnson & Johnson Vision Care, Inc. 2014 October



# ACUVUE® Brand Contact Lenses
# Unilateral Price Policy

Effective July 1, 2014, Johnson & Johnson Vision Care, Inc. (JJVCI) began to implement a Unilateral Price Policy (UPP) on many of our ACUVUE® Brand Contacts, starting with the ACUVUE® OASYS® Brand Contact Lenses six-month supply pack (12 lenses per box). The policy was expanded to include the ACUVUE® OASYS® Annual supply pack (24 lenses per box), 1-DAY ACUVUE® TruEye® Brand Contact Lenses and 1-DAY ACUVUE® MOIST® Contact Lenses on August 1, 2014. Effective October 1, 2014, the UPP will be expanded to include the ACUVUE® OASYS® 6-pack.

The UPP establishes a minimum price below which no reseller can advertise or sell a particular product. The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

Under this policy, Johnson & Johnson Vision Care, Inc. (JJVCI) and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price listed below.

This policy is unilateral and does not represent an agreement between JJVCI and its authorized distributors or resellers. As such, this policy is non-negotiable and individual representatives are not authorized to alter, waive, modify or negotiate this policy. Resellers are free to advertise and sell any UPP product at a price of their own choosing, however, violations will result in loss of product supply.

| PRODUCT | UPP Price | Start Date |
|---|---|---|
| ACUVUE® OASYS® Brand Contact Lenses (6 lenses per box) | $34.00 | 10/1/2014 |
| ACUVUE® OASYS® Six-month supply pack (12 lenses per box) | $67.50 | 7/1/2014 |
| ACUVUE® OASYS® Annual supply pack (24 lenses per box) | $110.00 | 8/1/2014 |
| ACUVUE® OASYS® For Astigmatism Brand Contact Lenses | $40.00 | 8/1/2014 |
| ACUVUE® OASYS® For Presbyopia Brand Contact Lenses | $40.00 | 8/1/2014 |
| 1-DAY ACUVUE® TruEye® Brand Contact Lenses | $82.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand Contact Lenses (30 lenses per box) | $33.00 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® Brand (90 lenses per box) | $63.50 | 8/1/2014 |
| 1-DAY ACUVUE® MOIST® for Astigmatism Brand Contact Lenses | $34.50 | 8/1/2014 |

Because an advertisement to "beat any price" logically commits a reseller to beat even a price that already is below the UPP Price, JJVCI will regard an advertisement promising to "beat any price" or using similar words to be an advertisement to sell for less than the UPP Price.

For further questions, please contact the number/email below. Your JJVCI and distributor sales representatives will be unable to discuss this policy beyond reciting the policy and its supporting documents.

acuvuepricepolicy@its.jnj.com, or dial 1.904.443.3824

Revised: 10/05/14

## UPP Frequently Asked Questions

These Frequently Asked Questions (FAQs) are intended to clarify how JJVCI interprets its Unilateral Price Policy (UPP). Should you have a question that is not addressed here, or need further clarification on the policy, please contact: acuvuepricepolicy@its.jnj.com or dial 1.904.443.3824.

In order to ensure that you receive accurate information regarding the UPP, JJVCI and distributor sales representatives will be unable to discuss the UPP beyond what is written here and will instead direct you to contact the email address or phone number listed above.

### Policy FAQs

**1.  Why is JJVCI adopting a UPP?**

   a.  The intent of the policy is to reinvigorate the rich clinical dialogue that is so important to effective patient care, rather than focusing on cost.

**2.  To whom does the UPP apply?**

   a.  The UPP applies to any person or business selling or advertising JJVCI contact lenses to consumers within the US.

**3.  How frequently is the UPP updated?**

   a.  There are currently no specific plans to regularly update the UPP. However, JJVCI reserves the right to modify the UPP at any time. If a modification is made, you will receive 30 days' notice before the amended UPP takes effect.

**4.  Am I permitted to sell UPP products above or below the UPP price?**

   a.  You are free to sell product you have purchased at any price you choose. However, if you sell product below the UPP price, JJVCI and its authorized distributors will refuse to accept new orders from you. In addition, JJVCI will exercise its right to repurchase your current inventory of products subject to the UPP price. If you sell product at or above the UPP price, JJVCI does not consider this to be a violation of the UPP.

**5.  How does JJVCI determine if a UPP violation has occurred?**

   a.  A violation has occurred if the final per unit purchase price following all discounts and redeemed rebates (excluding JJVCI issued Professional Service Recovery Reimbursement offers), but prior to sales tax and shipping costs, is below the UPP price or if the advertised price is below the UPP price. Shipping discounts or free shipping offers are permissible under this policy and are not counted against the final per unit purchase price.

**6.  Does the UPP apply to advertised prices as well?**

   a.  Yes, the UPP covers both the advertised price and the final sale price.

**7.  How do you define the advertised price?**

   a.  The advertised price point is the lowest per unit price point listed in store or in advertising materials. These materials include, but are not limited to, website "As Low As" pricing, coupons, free standing inserts, website in-cart pricing, third party affiliate advertising, and mailers.

**8.  Are rebates or discounts permitted under this policy?**

   a.  Yes. Rebates and discounts are permitted as long as the per unit purchase price after the rebate or discount is applied remains equal to or above the UPP price.
   For example, if you sell a box of 1-DAY ACUVUE® MOIST® for Astigmatism Brand with a 10% discount off of an original price of $40.00, the final price to the customer would be $36.00. This is above the UPP of $34.50 and would not violate the UPP.
   If you offered at 15% discount off of a $40.00 price, this would be a violation because the final price to the consumer would be $34.00
   *NOTE*: Professional Service Recovery Reimbursement offers issued by JJVCI to refit patients following product discontinuations are excluded when calculating final per unit purchase price.

**9.  Is Co-Advertising with other items considered a violation?**

a.  No. Co-Advertising with other items is allowed under this policy as long as the price applied to the JJVCI product(s) specifically stated on the receipt is not below the UPP price, and the price on the other product(s) or service is not contingent upon the purchase of JJVCI UPP products.

**10. Are "Combined product discounts" allowed with ACUVUE® Brand Contact Lens UPP products?** *For example: buy an annual supply of ACUVUE® OASYS® Brand Contact Lenses and get 20% off any pair of glasses.*

a.  Yes, these types of offers are permitted when an annual supply is purchased and the following conditions are met. (see question #12 for combined product discounts with less than an annual supply of contacts)

i.  The discount is only applied to the non-UPP products in the offer and the price of the ACUVUE® product is equal to or above its UPP price.

ii.  The price of the ACUVUE® product is clearly stated in any advertising and on the receipt.

iii.  The offer contains only optical products, but not contact lenses.

iv.  All items and discounts included in the offer must be part of the same transaction.

v.  For offers that include in-office or in-store credits, see question #11 below.

**11. Can I create a combined product discount that includes in-office or in-store credit?** *For example: buy an annual supply and receive $50 in-office credit?*

In-office and in-store credits includes: account credits, store credits, promotional code or offer code credits. *Any customer incentives redeemable outside of the purchase location, such as pre-paid VISA or American Express cards, are not permitted.*

a.  Yes, offers that include in-office or in-store credit are permitted when an annual supply is purchased and the following conditions are met:

i.  The value of the credit does not exceed $50.

ii.  The offer cannot be combined with any other offer.

iii.  The price of the ACUVUE® product is equal to or above its UPP price.

iv.  The price of the ACUVUE® product is clearly stated in any advertising and on the receipt.

v.  The in-office or in-store credit can only be advertised through displays and communications occurring within the office or store and cannot be advertised externally. External advertising includes flyers, mailers, internet, prices quoted over the phone, etc.

vi.  The credit can only be used for future purchases.

vii.  The credit cannot be used towards the purchase of contact lenses.

**12. Can I create a combined product discount when less than an annual supply is purchased?**

a.  Yes, these types of offers are permitted if all of the following conditions are met:

i.  The price of the UPP product remains equal to or above the UPP price after subtracting the total savings value. *The total savings value is the sum of the discounts on all products and services included in the offer.*

ii.  The offer explicitly states the total savings value. *If the offer includes a fixed percentage discount, the total savings value for the offer must be capped at an amount that would not violate the UPP and this cap must be explicitly stated.*

iii.  The price of the UPP product is clearly stated on the customer receipt.

iv.  All items and discounts included in the offer must be part of the same transaction.

v.  The offer cannot include "free" products or services.

**13. How are Vision Insurance Benefits / Health Care Plans offered by Managed Care Organizations (MCO) or Managed Vision Care Companies (MVCC) viewed under the UPP?**

a.  Reimbursements, discounts, and allowances offered by MCOs or MVCCs are exempt from the UPP.

**14. Plans from what types of Managed Care Organizations (MCO) or Managed Vision Care Companies (MVCC) are exempted from the UPP?**

   a. MCOs and MVCCs must meet the following criteria for their plans to be exempt:

      i. Provide medical device (and/or durable medical equipment reimbursement programs) and vision care professional service reimbursement programs for individuals enrolled in plans.

      ii. Provide vision reimbursement programs for its members for each such plan that may include reimbursement and discounts contractually for contact lenses.

      iii. Is an insurer or other risk bearing entity registered with the State Insurance Commissioner's Office or Regulatory Body in each state, district or U.S. Territory who provides coverage. Coverage is any benefit outlined in the respective MCO / MVCC plan document.

   b. For a comprehensive list of US insurers, please contact acuvuepricepolicy@its.jnj.com.

**15. Are employee discounts permitted under the UPP?**

   a. Employee discounts on UPP products are exempt from the UPP, provided that these prices are not advertised or offered to the general public.

**16. Are military discounts permitted under the UPP?**

   a. Military discounts offered to both active duty and retired military personnel are exempt from the Unilateral Price Policy and are not included when determining final price after discounts. Any advertising of UPP products cannot include or make reference to military discounts and all prices conveyed in the advertising must be equal to or above the UPP price.

**17. What happens if I violate the UPP?**

   a. Once JJVCI has to reason to believe that a violation of the UPP has occurred, JJVCI will send a notice (via FedEx with signature required) indicating the nature of the violation. If JJVCI determines that you are in fact in violation of the UPP, JJVCI will cease to supply UPP products to your account for a period of 12 months.

**18. Will a discontinuation of product shipments apply to all JJVCI products?**

   a. No. JJVCI will only stop shipping products covered by the UPP. All non-UPP JJVCI products will continue to ship.

**19. What if my violation was unintentional or due to a misunderstanding of the UPP?**

   a. You are responsible for the accuracy of your pricing, understanding and complying with this policy. JJVCI will determine to its sole satisfaction whether a violation has occurred.

**CONFIDENTIAL:** This pricing information is confidential and intended only for the eye care professional office receiving this letter. It is subject to any existing confidentiality provisions you have agreed to with Johnson & Johnson Vision Care, Inc or your distributor. It may not be shared with third parties outside of your office.

ACUVUE® Brand Contact Lenses are indicated for vision correction. As with any contact lens, eye problems, including corneal ulcers, can develop. Some wearers may experience mild irritation, itching or discomfort. Lenses should not be prescribed if patients have any eye infection, or experience eye discomfort, excessive tearing, vision changes, redness or other eye problems. Consult the package insert for complete information. Complete information is also available from VISTAKON® Division of Johnson & Johnson Vision Care, Inc., by calling 1-800-843-2020 or by visiting acuvueprofessional.com. ACUVUE®, ACUVUE® ADVANCE®, MOIST®, TrueEye®, ACUVUE® 2®, ACUVUE® OASYS®, and VISTAKON® are trademarks of Johnson & Johnson Vision Care, Inc.

The third-party trademarks used herein are owned by their respective companies.

© Johnson & Johnson Vision Care, Inc. 2014 October



ACUVUE®
B R A N D   C O N T A C T   L E N S E S

**INNOVATION FOR HEALTHY VISION™**