William F. Cavanaugh, Jr. – Cal. Bar No. 133461
*wfcavanaugh@pbwt.com*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel:     (212) 336-2000
Fax:     (212) 336-2222

Peter K. Huston – Cal. Bar No. 150058
*phuston@sidley.com*
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Tel:     (415) 772-1200
Fax:     (415) 772-7400

*Attorneys for Defendant*
*Johnson & Johnson Vision Care, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| COSTCO WHOLESALE CORPORATION,<br><br>                 Plaintiff,<br><br>        v.<br><br>JOHNSON & JOHNSON VISION CARE, INC.,<br><br>                 Defendant. | Case No. 15-cv-00941 (HSG)<br><br>**DEFENDANT JOHNSON & JOHNSON VISION CARE, INC.'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Fed. R. Civ. P. 12(b)(6)<br><br>Date:         July 2, 2015<br>Time:         2:00 p.m.<br>Judge:       Hon. Haywood S. Gilliam, Jr.<br>Courtroom:   15 |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ........................................................................................................ iii

3

NOTICE OF MOTION ................................................................................................................. 1

4

STATEMENT OF ISSUES .......................................................................................................... 1

5

PRELIMINARY STATEMENT ................................................................................................... 1

6

SUMMARY OF ALLEGATIONS ............................................................................................... 3

7

      A.    The Parties ...................................................................................................... 3

8

      B.    JJVCI's Unilateral Pricing Policy ................................................................. 4

9

      C.    The Alleged "Conspiracies" .......................................................................... 4

10

      D.    Costco's Alleged Negotiations with JJVCI ................................................... 6

11

      E.    Costco's Alleged Injury ................................................................................. 6

12

ARGUMENT ................................................................................................................................ 7

13

I.     LEGAL STANDARD ........................................................................................................ 7

14

II.    COSTCO'S ANTITRUST CLAIMS FAIL AS A MATTER OF LAW .......................... 7

15

      A.    Costco Has Not Adequately Pled the Existence of Any Conspiracy ............. 7

16

17

            1.    Costco Fails to Allege Facts that Plausibly Support a Conspiracy Between JJVCI and ECPs ............................................................... 10

18

            2.    Costco Fails to Allege Facts that Plausibly Support a Conspiracy Between JJVCI and its Distributors ............................................... 12

19

20

            3.    Costco Fails to Allege Facts that Plausibly Support the Existence of a Conspiracy Between JJVCI and Itself and "Other Retailers" ...... 14

21

      B.    Costco Fails to Allege Facts Showing that It Sustained Injury in Fact, Let Alone an Antitrust Injury ...................................................................... 16

22

            1.    Costco Has Not Suffered Any Injury in Fact as the Result of the UPP ............. 17

23

24

            2.    Costco Does Not Have Antitrust Standing to Bring its Antitrust Claims Because It Has Failed to Allege an Antitrust Injury in a Specific Product Market .............................................................................................. 18

25

III.   THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE FTC ACT OR NY GBL § 369-A ..........................................................................................................20

26

      A.    The FTC Act ................................................................................................ 21

27

      B.    New York General Business Law § 369 ..................................................... 22

28

-i-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.     PLAINTIFF'S UCL CLAIM FAILS BECAUSE THE ANTITRUST CLAIMS FAIL ..............23

    A.     Costco Has Failed to Plead Unlawful Conduct Under the UCL .................................... 23

    B.     Costco Has Failed to Plead Unfair Conduct Under the UCL ......................................... 24

CONCLUSION ........................................................................................................................25

DEFENDANT JOHNSON & JOHNSON VISION CARE, INC.'S MOTION TO DISMISS – 3:15-CV-00941-HSG

1

2 **TABLE OF AUTHORITIES**

3 **Page(s)**

4 **Cases**

5 *Acquaire v. Canada Dry Bottling Co. of N.Y., Inc.*,

6    24 F.3d 401 (2d Cir. 1994)............................................................................16

7 *Aguilar v. Atl. Richfield Corp.*,

   25 Cal. 4th 826 (2001) ................................................................................8

8 *Aleem v. Bank of Am., N.A.*,

9    No. EDCV 09-01812, 2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010)..............................24

10 *Aleksick v. 7-Eleven, Inc.*,

11    205 Cal. App. 4th 1176 (4th Dist. 2012)...................................................23

12 *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,

   190 F.3d 1051 (9th Cir. 1999)...............................................................18, 19

13 *Amarel v. Connell*,

14    102 F.3d 1494 (9th Cir. 1997)....................................................................17

15 *Apple Inc. v. Psystar Corp.*,

16    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ..................................................19

17 *Ashcroft v. Iqbal*,

   556 U.S. 662 (2009)..............................................................................7, 12

18 *Associated Gen. Contractors v. Cal. Stat. Council of Carpenters*,

19    459 U.S. 519 (1983)...........................................................................17, 18

20 *Atl. Richfield Co. v. USA Petroleum Co.*,

   495 U.S. 328 (1990)..................................................................................19

21 *Australian Gold, Inc. v. Hatfield*,

22    436 F.3d 1228 (10th Cir. 2006)................................................................12

23 *Bell Atl. Corp. v. Twombly*,

24    550 U.S. 544 (2007) ..........................................................................*passim*

25 *Belton v. Comcast Cable Holdings LLC*,

   151 Cal. App. 4th 1224 (2007)..................................................................24

26 *Big Bear Lodging Ass'n v. Snow Summit, Inc.*,

27    182 F.3d 1096 (9th Cir. 1999)...................................................................20

28

*Boisvert v. Li*,
  No. 13-cv-01590, 2013 U.S. Dist. LEXIS 118134 (N.D. Cal. Aug. 20, 2013) ...............................21

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  No. 14-cv-0751, 2015 U.S. Dist. LEXIS 20359 (S.D. Cal. Jan. 6, 2015)........................................9

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ...................................................................................................19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ....................................................................................................................19

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
  485 U.S. 717 (1988) .................................................................................................................9, 11

*Carlson v. Coca-Cola Co.*,
  483 F.2d 279 (9th Cir. 1973) .......................................................................................................21

*Chavez v. Whirlpool*,
  93 Cal. App. 4th 363 (2001)...................................................................................................*passim*

*City of San Jose v. Office of the Comm'r of Baseball*,
  776 F.3d 686 (9th Cir. 2015) .......................................................................................................24

*Conroy v. 3M Corp.*,
  No. C 00-2810, 2003 U.S. Dist. LEXIS 26271 (N.D. Cal. Apr. 22, 2003) .....................................10

*Freeman v. San Diego Assoc. of Realtors*,
  77 Cal. App. 4th 171 (1999).........................................................................................................9

*GATT Commc'ns v. PMS Assocs., LLC*,
  711 F.3d 68 (2d Cir. 2013) ..........................................................................................................19

*Gerlinger v. Amazon.com, Inc.*,
  526 F.3d 1253 (9th Cir. 2008).................................................................................................17–18

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................................................7

*Hanson v. Shell Oil Co.*,
  541 F.2d 1352 (9th Cir. 1976)......................................................................................................16

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010).....................................................................................................14

*The Jeanery, Inc. v. James Jeans, Inc.*,
  849 F.2d 1148 (9th Cir. 1988)..............................................................................................7, 8, 16

*Johnson v. Nextel Commc'ns, Inc.*,
  660 F.3d 131 (2d Cir. 2011).........................................................................................................21

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ................................................................*passim*

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ...............................................................................12–13, 19

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
    104 Cal. App. 4th 508 (2002) ..............................................................................23

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
    No. 13-cv-01180, 2014 U.S. Dist. LEXIS 133540 (N.D. Cal. Sept. 22, 2014) ...............20

*Lucas v. Citizens Commc'ns. Co.*,
    409 F. Supp. 2d 1206 (D. Haw. 2005) ................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................17, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................10, 14

*Miles Distribs. v. Specialty Constr. Brands, Inc.*,
    476 F.3d 442 (7th Cir. 2007) ..............................................................................10

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) ..........................................................................*passim*

*Morrison v. Viacom, Inc.*,
    66 Cal. App. 4th 534 (1998) ..............................................................................18

*Mularkey v. Holsum Bakery*,
    146 F.3d 1064 (9th Cir. 1998) ............................................................................13

*In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*,
    MDL No. 2121, 2012 U.S. Dist. LEXIS 118827 (S.D. Cal. Aug. 20, 2012) ...............9, 10

*Nat'l Cable Television Coop., Inc. v. Lafayette City-Parish Consol.*
    *Gov't of Lafayette, La.*, Civ. A. No. 10-2254, 2010 U.S. Dist. LEXIS 124387
    (D. Kan. Nov. 23, 2010) ...............................................................................22

*Natural Design, Inc. v. Rouse Co.*,
    302 Md. 47 (1984) .................................................................................9, 18

*O'Donnell v. Bank of Am., N.A.*,
    504 F. App'x 566 (9th Cir. 2013) .......................................................................24

*O.S.C. v. Apple Computer, Inc.*,
    792 F.2d 1464 (9th Cir. 1986) ............................................................................11

*Olivera v. Am. Home Mortg. Servs., Inc.,*
   689 F. Supp. 2d 1218 (N.D. Cal. 2010) ...........................................................4

*People v. Tempur-Pedic Int'l, Inc.,*
   95 A.D.3d 539 (1st Dep't 2012).........................................................................22

*Piñon v. Bank of Am., N.A.,*
   741 F.3d 1022 (9th Cir. 2014)...........................................................................23

*Quality Disc. Tires, Inc. v. Firestone Tire,*
   282 Md. 7 (1978) ...............................................................................................18

*Rheumatology Diagnostics Lab. Inc. v. Aetna, Inc.,*
   No. 12-cv-05847, 2013 U.S. Dist. LEXIS 151128
   (N.D. Cal. Oct. 18, 2013) ....................................................................................9

*Ritchie v. Cmty. Lending Corp.,*
   No. CV 09-02484, 2009 U.S. Dist. LEXIS 73216
   (C.D. Cal. Aug. 12, 2009) .................................................................................21

*Ross v. Morgan Stanley Smith Barney LLC,*
   No. 2:12-cv-09687, 2013 U.S. Dist. LEXIS 31822
   (C.D. Cal. Mar. 7, 2013) ...................................................................................23

*Sobayo v. Public Storage,*
   No. C 13-01804, 2013 U.S. Dist. LEXIS 105116
   (N.D. Cal. July 26, 2013) ..................................................................................21

*United States v. Colgate & Co.,*
   250 U.S. 300 (1919)....................................................................................*passim*

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003)...............................................................................4

*W. Mining Council v. Watt,*
   643 F.2d 618 (9th Cir. 1981)...............................................................................7

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.,*
   588 F.3d 659 (9th Cir. 2009)...............................................................................7

*Worldhomecenter.com, Inc. v. KWC Am., Inc.,*
   10 Civ. 7781, 2011 U.S. Dist. LEXIS 104496
   (S.D.N.Y. Sept. 15, 2011) .................................................................................22

**Statutes**

15 U.S.C. § 1 .........................................................................................................8

15 U.S.C. § 15 .....................................................................................................17

15 U.S.C. § 7608 ............................................................................................................22

Cal. Bus. & Prof. Code § 17200 ..................................................................................23

DEFENDANT JOHNSON & JOHNSON VISION CARE, INC.'S MOTION TO DISMISS – 3:15-CV-00941-HSG

**NOTICE OF MOTION**

Please take notice that on July 2, 2015, at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, defendant Johnson & Johnson Vision Care, Inc. ("JJVCI") will and hereby does move to dismiss Plaintiff's complaint.

JJVCI's Motion to Dismiss is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and other pleadings in support of the Motion, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF ISSUES**

1.  Whether each cause of action in Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted.

2.  Whether Plaintiff has failed to properly plead the required elements of an agreement under the Sherman, Cartwright, and Maryland Antitrust Acts.

3.  Whether Plaintiff has failed to properly plead injury in fact and antitrust standing under the Sherman, Cartwright, and Maryland Antitrust Acts.

4.  Whether Plaintiff has failed to plead the required elements for breach of contract and whether Plaintiff has no private right of action under the Federal Trade Commission Act or New York General Business Law § 369-a.

5.  Whether Plaintiff has failed to plead unlawful or unfair conduct under the Unfair Competition Law.

**PRELIMINARY STATEMENT**

Last year, JJVCI, a market leader and innovator in the development of contact lenses, publicly announced a unilateral uniform pricing policy ("UPP"). The stated goal is to lower the overall price that retailers and eye care professionals ("ECPs") charge for certain JJVCI contact lenses, but it also establishes a pricing floor for those lenses. Resellers are free to sell below the UPP, but JJVCI reserves the right to discontinue selling those lenses to them.

Manufacturer pricing policies such as the UPP are entirely lawful. Decades ago the Supreme

1    Court recognized a manufacturer's right to implement such a policy. In recent years, the Supreme

2    Court has gone farther. Overruling a century-old decision, the Supreme Court held that vertical pricing

3    *agreements* between manufacturers and resellers should not be treated as *per se* unlawful under the

4    Sherman Act because they have procompetitive purposes, including promoting interbrand competition

5    and negating free riding. Such agreements are therefore now subject to the same "rule of reason"

6    antitrust standard by which any commercial agreement is judged.

7          Costco concedes that it is still pricing JJVCI lenses below the prices charged by other resellers.

8    Yet, Costco is unhappy with the UPP, preferring to sell other JJVCI contact lenses to its customers

9    (who pay a membership fee to shop at Costco) at prices below the UPP. Because it cannot plausibly

10   challenge JJVCI's pricing policy if it is unilateral, Costco alleges that the UPP is actually the result of a

11   series of secret conspiracies between JJVCI and unnamed ECPs; JJVCI and unnamed distributors (as

12   well as among distributors); and even JJVCI and Costco. Costco then asks this court to "reform" its

13   supposed "agreement" with JJVCI to require JJVCI to continue selling contact lenses to Costco, but

14   only on terms that Costco finds acceptable.

15         What is missing from Costco's complaint are facts to support these conspiracy allegations and

16   its antitrust claims—all of which require Costco to adequately plead the existence of an agreement.

17   JJVCI's public recognition in announcing the UPP and receiving feedback from customers is not

18   evidence of an agreement. Seeking feedback from one's customers is legitimate procompetitive

19   conduct. The fact that some retailers and ECPs—unlike Costco—find the UPP unobjectionable does

20   not transform a unilateral policy into a vertical agreement. Costco fails to identify a single retailer or

21   ECP whose consent JJVCI sought and needed as a condition to announcing the UPP. The same holds

22   true for the alleged conspiracy that involves JJVCI and companies that simply distribute JJVCI contact

23   lenses to retailers and ECPs approved by JJVCI.

24         Equally unavailing is Costco's contention that its decision to abide by the UPP is evidence that

25   it has entered into an agreement with JJVCI. Costco does not (and cannot) allege that JJVCI

26   announced the UPP as part of some agreement with Costco. Instead, Costco alleges that after the UPP

27   was announced, Costco raised some concerns and in response, JJVCI made an adjustment to the UPP

28

for club stores such as Costco.  But Costco's own complaint contradicts any contention that there was an agreement.  Costco alleges that it has continued to object to the UPP, including by filing this lawsuit.  Therefore, it is not plausible that JJVCI and Costco had what the law requires—"a conscious commitment to a common scheme"—regarding the UPP.

Costco also fails to plead facts showing that it will suffer any injury in fact as a result of the UPP or any injury recognized by the antitrust laws.  It does not buy from distributors and Costco admits that it is still able to sell contact lenses below the prices charged by ECPs.  As for its dealings with JJVCI, Costco does not (and could not) allege that JJVCI raised the price Costco pays for lenses covered by the UPP (because, in fact, JJVCI decreased its prices in conjunction with announcing the UPP).  Costco simply speculates that it may lose sales as a result of the UPP, but in the next breath alleges that ECPs continue to charge higher prices than Costco.  Furthermore, Costco fails to specify which product market it actually contends suffered a harm to competition as a result of the UPP, and without such a showing of harm it has no standing to bring its antitrust claims.

Finally, Costco alleges that its purported agreement with JJVCI, and JJVCI's UPP, violate the Federal Trade Commission Act ("FTC Act"), the New York General Business Law, and California's Unfair Competition Law.  But Costco has no private right of action under the FTC Act or under the New York law on which it relies.  And its claim under the Unfair Competition Law fails based on its failure to plead any underlying violation of law needed to support such a claim.

The complaint should be dismissed.

## SUMMARY OF ALLEGATIONS

### A.    The Parties

Costco is a nationwide warehouse club that offers its members discount prices on various goods—including eye care products like contact lenses—in return for an annual membership fee. Compl. ¶ 13.  JJVCI manufactures a variety of disposable contact lenses.  *Id.* ¶ 15 & Exs. A–E.  Costco sells contact lenses made by four major contact lens manufacturers, including JJVCI.  *Id.* ¶ 23.  Costco directly purchases contact lenses from JJVCI under a Qualified Retail Account Agreement.  *Id.* ¶ 1; *see*

1    *also* Ex. 1 (QRRA).[1]  Costco does not allege that it purchases JJVCI's contact lenses from any other

2    sources, such as distributors.

3          Patients obtain contact lenses made by JJVCI or another manufacturer by visiting one of

4    thousands of ECPs and obtaining an appropriate prescription.  *Id.* ¶ 26.  Once the patient has received

5    the prescription, an individual may purchase contact lenses, either from an ECP or through an

6    alternative retailer such as Costco.  *Id.* ¶¶ 2, 4.

7          **B.    JJVCI's Unilateral Pricing Policy**

8          In June 2014, JJVCI announced a uniform pricing policy applicable to some lines of contact

9    lenses.  Compl. ¶ 51.  The UPP took effect on July 1, 2014.  *Id.* & Ex. A at 1.  As JJVCI explained

10   through a series of "Frequently Asked Questions" accompanying its announcement, the UPP is

11   intended to "reinvigorate the rich clinical dialogue that is so important to effective patient care"

12   between patients and ECPs, rather than having eye care appointments "focus[] on cost."  *Id.* Ex. A at 1.

13   JJVCI made clear that its policy is "unilateral and does not represent an agreement between JJVCI and

14   its authorized distributors or resellers," and that retailers like Costco are "free to advertise and sell any

15   UPP product at a price of their own choosing."  *Id.*  However, if a retailer chooses not to follow the

16   UPP, JJVCI will no longer supply products that are subject to the UPP to that retailer.  *Id.*  JJVCI made

17   several modifications to its policy over the following months (including applying it to additional lines

18   of contact lenses), but explicitly repeated these basic principles in each subsequent version of its

19   policy.  *See id.* Exs. B–E.

20         **C.    The Alleged "Conspiracies"**

21         Costco alleges that JJVCI's UPP is not unilateral, but instead came about as a result of an

22   alleged conspiracy initiated by unnamed ECPs and distributors.  Costco alleges that ECPs "leverage[d]

23   their control over prescriptions to extract from manufacturers … concerted actions to prevent or limit

24   the effects of price discounting and other competition in the Retail Contact Lens Markets."  Compl.

25   _____

26   [1] Exhibit 1 is attached to the accompanying Declaration of William F. Cavanaugh, Jr.  The Court may
     consider documents incorporated by reference in Plaintiff's complaint—such as the Qualified Retail
27   Account Agreement—or documents attached to the complaint in the context of a motion to dismiss.
     *See Olivera v. Am. Home Mortg. Servs., Inc.*, 689 F. Supp. 2d 1218, 1221 (N.D. Cal. 2010) (citing
28   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

¶ 42.  According to Costco, unilateral pricing policies allow ECPs to preserve margins on contact lenses they sell without fear of competition from other retailers.  *Id.*

Costco claims that after other manufacturers adopted their own unilateral pricing policies with respect to certain lines of contact lenses, unspecified "retailers urged [JJVCI] … to follow suit."  *Id.* ¶ 49.  But the complaint does not identify a single ECP that urged JJVCI to adopt the UPP JJVCI ultimately announced.  Instead, Costco's conspiracy allegation rests on a mass letter from JJVCI to ECPs dated June 24, 2014 in which JJVCI thanked ECPs for their responses to a request for "feedback."  *Id.*  Costco alleges that this acknowledgement that JJVCI sought feedback means JJVCI must have "conspired" with ECPs to introduce the UPP.[2]  *Id.*  Costco does not identify which ECPs participated in these alleged discussions that led to an agreement to introduce the UPP, when those discussions occurred, or their substance.

Although the UPP explicitly states that it does not constitute an agreement "between JJVCI and its authorized distributors," *id.* Ex. A at 1, Costco further alleges that JJVCI would have "needed the agreement of its distributors," and that JJVCI and its distributors must therefore have further conspired to adopt the UPP, *id.* ¶¶ 50–51.  Costco does not describe which distributors have been involved in this conspiracy, the terms to which JJVCI and the distributors allegedly agreed, or any of the mechanics of the conspiracy.  Nor does Costco allege any facts indicating that the distributors had any input in the UPP or any of JJVCI's pricing decisions.

Costco cites language from the UPP providing that if a retailer violated the policy, "[JJVCI] and its authorized distributors will cease to supply UPP products."  *Id.* ¶ 50.  But Costco does not plead facts to explain why JJVCI's decision to end its relationship with a reseller requires an agreement between JJVCI and its distributors to introduce a UPP, as opposed to a unilateral determination by JJVCI to introduce the UPP and a direction to a distributor that a retailer is no longer authorized to receive JJVCI contact lenses covered under the UPP because of a violation of JJVCI's policy.

---

[2] Costco does not suggest that JJVCI and the other manufacturers entered into any joint conspiracy or other agreement to implement unilateral pricing policies.

### D.   Costco's Alleged Negotiations with JJVCI

In December 2014, Costco signed its current Qualified Retail Account Agreement with JJVCI, which governs the *wholesale* price at which Costco can purchase contact lenses from JJVCI.  *See* Ex. 1 (QRRA) § 1.3 & Schedule C.  Notably, the Qualified Retail Account Agreement does not contain any terms dictating the retail price at which Costco sells contact lenses to its members and does not reference the UPP even by incorporation.  *See generally id.*

Costco claims that although it "was and remains opposed" to the UPP, it "negotiated adjustments to the Policy" with JJVCI to permit certain in-store credits and combined product discounts, so long as the net price of the contact lenses remained at or above the UPP price.  Compl. ¶ 54.  Costco alleges that it met with JJVCI on September 25, 2014 to further discuss the UPP.  It claims that as a result of these discussions, JJVCI made an additional change to its UPP to make clear that "club stores" (where consumers pay a fee to be a member) can offer a 10% discount to its customers who purchase contact lenses in the form of a gift card that could be applied to subsequent purchases of non-contact lens products without violating the UPP.  *Id.* ¶¶ 58–59.

But Costco's complaint is devoid of facts to support its contention that the discussions between Costco and JJVCI amount to an "agreement" as to JJVCI's decision to introduce a UPP, or that JJVCI's clarification of the UPP was the quid pro quo for Costco's "agreement" to abide by its terms.  In fact, Costco alleges that discussions with JJVCI continued into 2015 with no resolution and ultimately resulted in the filing of this lawsuit.  *Id.* ¶ 60.

### E.   Costco's Alleged Injury

Despite its claimed opposition to the UPP, Costco alleges that it continues to sell JJVCI contact lenses and has complied with the UPP because it was in "the best interests of its members."  Compl. ¶ 60.  Costco further alleges that other retailers of JJVCI contact lenses subject to the UPP are selling those lenses at higher prices than those required by the UPP or offered by Costco and thus Costco's members are "better off than they would be if Costco refused to sell [JJVCI's] lenses on [JJVCI's] terms."  *Id.* ¶ 63.  Tellingly, Costco admits that the UPP allowed it "to reduce prices for annual purchases of some of J&J's contact lenses," *id.* ¶ 57, and that "some retailers are setting prices above J&J's minimum prices and not employing available discount exceptions."  *Id.* ¶ 63.  Although Costco

claims that the UPP "has harmed consumers, including Costco members," it acknowledges that its own "margin on [lenses subject to the UPP] has increased." *Id.* ¶¶ 63, 68. Despite these increased profits and the fact that it is selling below other resellers, Costco alleges that the UPP will eventually result in Costco seeing reduced sales of contact lenses and other products. *Id.* ¶ 68.

## ARGUMENT

### I.    LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions . . . will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are no better. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In antitrust cases, plausibility is evaluated "in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009). A complaint may not rest on conclusory assertions "cast in the form of factual allegations," *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), nor on "just ultimate facts (such as conspiracy), but *evidentiary facts* which, if true, will prove" the alleged violation, *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (emphasis added). Plaintiff's complaint fails to meet this standard with respect to all of its claims.[3]

### II.   COSTCO'S ANTITRUST CLAIMS FAIL AS A MATTER OF LAW

#### A.    Costco Has Not Adequately Pled the Existence of Any Conspiracy

Unilateral conduct by a single entity, "even if it appears to restrain trade unreasonably, is not unlawful" under the Sherman Act. *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) (internal quotation marks omitted). It is well established that a manufacturer may

---

[3] Federal pleading standards govern claims brought in federal court, including those arising under state law. *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007) (applying *Twombly* in dismissing federal and state antitrust claims).

1   unilaterally adopt a pricing policy imposing a minimum resale price and deal only with those retailers

2   who adhere to that policy. *See United States v. Colgate & Co.*, 250 U.S. 300, 305–07 (1919);

3   *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) (reaffirming *Colgate*). JJVCI's

4   unilateral decision to implement a pricing policy and its refusal to do business with retailers that do not

5   adhere to that pricing policy is well within the longstanding rights of private manufacturers. *See The*

6   *Jeanery*, 849 F.2d at 1153 (citing *Colgate*, 250 U.S. at 305–07). JJVCI is entitled "to select with whom

7   to do business and on what terms." *Chavez v. Whirlpool*, 93 Cal. App. 4th 363, 373 (2001). Indeed,

8   "[i]f any business justification is needed for such a termination, it is supplied by the manufacturer's

9   business judgment that it is important to its marketing strategy and the maintenance of its dealer

10  network not to have its goods sold at less than the suggested retail price." *The Jeanery*, 849 F.2d at

11  1159.

12          To state a Section 1 violation under the Sherman Act, a plaintiff must allege:  (1) a contract,

13  combination, or conspiracy among two or more distinct business entities; (2) that is intended to harm

14  or restrain trade or commerce; and (3) that actually causes injury to competition. 15 U.S.C. § 1;

15  *Kendall,* 518 F.3d at 1047. Allegations of an unlawful agreement at the pleading stage must be

16  scrutinized closely to avoid time-consuming and expensive discovery of a meritless antitrust claim.

17  *Twombly*, 550 U.S. at 559 ("[I]t is only by taking care to require allegations that reach the level

18  suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery.").

19  "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to

20  show illegality" for purposes of Section 1 of the Sherman Act. *Id.* at 557. To successfully plead a

21  plausible antitrust conspiracy in the Ninth Circuit, a plaintiff must allege evidentiary facts answering

22  "the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d

23  at 1048.

24          California courts have adopted the federal standard for determining whether a plaintiff has

25  adequately pleaded an antitrust conspiracy under the Cartwright Act. *See Aguilar v. Atl. Richfield*

26  *Corp.*, 25 Cal. 4th 826, 855 (2001); *Chavez*, 93 Cal. App. 4th at 369. Courts therefore require a "high

27  degree of particularity" in pleading conspiracy claims under the Cartwright Act and generalized

28

1   allegations of antitrust violations are insufficient.  *Freeman v. San Diego Assoc. of Realtors*, 77 Cal.

2   App. 4th 171, 196 (1999) ("The absence of factual allegations of specific conduct in furtherance of the

3   conspiracy to eliminate or reduce competition makes the complaint legally insufficient.").  Maryland

4   has similarly adopted the federal standard for purposes of its own antitrust act.  *See Natural Design,*

5   *Inc. v. Rouse Co.*, 302 Md. 47, 53 (1984) (finding that "decisions of the federal courts interpreting § 1

6   of the Sherman Act guide" interpretation of the Maryland Antitrust Act.)

7         Consequently, an antitrust plaintiff must plead enough facts to support the inference that the

8   alleged conspirators made a "conscious commitment to a common scheme designed to achieve an

9   unlawful objective."  *Monsanto*, 465 U.S. at 764.  "The touchstone of an agreement is a 'meeting of

10  the minds,' creating a sense of mutual obligation among the alleged conspirators."  *In re Nat'l Ass'n of*

11  *Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, MDL No. 2121, 2012 U.S. Dist. LEXIS

12  118827, at \*22 (S.D. Cal. Aug. 20, 2012) (quoting *Twombly*, 550 U.S. at 557).  To show a "common

13  scheme" or a "meeting of the minds," it must be shown that the retailer "communicated its

14  acquiescence or agreement," which was sought by the manufacturer, *see Monsanto*, 465 U.S. at 763

15  n.9, and that there was "further agreement on the price or price levels to be charged," *Bus. Elecs. Corp.*

16  *v. Sharp Elecs. Corp.*, 485 U.S. 717, 726–27 (1988).  The bare assertion of the existence of an unlawful

17  agreement is a "legal conclusion" not entitled to an assumption of truth.  *Twombly*, 550 U.S. at 555.

18        Courts routinely dismiss, as they must, antitrust claims at this stage where there is no factual

19  support as to *who* reached *what* agreement with *whom*, and *when* any alleged agreement was reached.

20  *See, e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-cv-0751, 2015 U.S. Dist. LEXIS

21  20359, at \*26–37 (S.D. Cal. Jan. 6, 2015); *Rheumatology Diagnostics Lab. Inc. v. Aetna, Inc.*, No. 12-

22  cv-05847, 2013 U.S. Dist. LEXIS 151128, at \*33–46 (N.D. Cal. Oct. 18, 2013).  Costco does not plead

23  any of the facts required under *Kendall*—the "who, what, where, and when" of an alleged

24  conspiracy—to show that the UPP is anything other than a unilateral policy by JJVCI.  Because rote,

25  unsupported allegations of an unlawful conspiracy are insufficient to meet the pleading standard

26  required by the Supreme Court and the Ninth Circuit, Costco's antitrust claims fail.

27

28

1

### 1.    Costco Fails to Allege Facts that Plausibly Support a Conspiracy Between JJVCI and ECPs

2    Costco asserts that JJVCI entered into an unlawful vertical conspiracy with ECPs—that JJVCI,

3   through "[r]equests, demands, negotiations, and formal and informal understandings," Compl. ¶ 10(a),

4   conspired with ECPs in "communications and meetings to devise and ultimately agree upon" JJVCI's

5   UPP. *Id.* ¶ 49.  But the existence of this supposed conspiracy rests solely on the vague and speculative

6   allegations that (1) "some retailers urged" JJVCI to implement a UPP, (2) JJVCI's President of the

7   Americas sought "feedback" from ECPs, and (3) JJVCI sent a June 24, 2014 mass letter to ECPs

8   thanking them for their "open and candid responses" to the feedback request.  *Id.*

9    Costco's reliance on JJVCI's request for feedback from unnamed ECPs—which number in the

10  thousands—as evidence of an agreement is entirely misplaced.  Seeking information from one's

11  customers is legitimate procompetitive conduct, and courts have recognized since *Monsanto* that it is

12  in a manufacturer's independent business interest to solicit and incorporate feedback from customers

13  into its business model.  *See Monsanto*, 465 U.S. at 762 (holding that regular discussions about process

14  and exchange of price information between supplier and distributors are legitimate and do not

15  necessarily amount to concerted price-fixing); *Miles Distribs. v. Specialty Constr. Brands, Inc.*, 476

16  F.3d 442, 451 (7th Cir. 2007) (holding no jury could infer a price fixing agreement from the fact that a

17  manufacturer and its distributors discussed and acted in concert regarding issues like retaining

18  customer accounts and promoting the manufacturer's products).  Indeed, allegations of

19  communications—even about pricing—between parties at different levels of the supply chain are

20  simply not probative of a conspiracy.  *See, e.g., In re Nat'l Ass'n of Music Merchants*, 2012 U.S. Dist.

21  LEXIS 118827, at *22; *Conroy v. 3M Corp.*, No. C 00-2810, 2003 U.S. Dist. LEXIS 26271, at *18

22  (N.D. Cal. Apr. 22, 2003) ("Nor can Plaintiffs prove the existence of an illegal conspiracy by proving

23  that [a manufacturer] provided its retailers with detailed information about the prices charged by their

24  competitors as part of its attempt to convince them to raise retail prices.")

25    Here, Costco has not alleged any facts that tend to exclude the possibility that JJVCI and the

26  ECPs were acting independently.  *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

27  U.S. 574, 588 (1986) ("[A] plaintiff seeking damages for a violation of § 1 must present evidence 'that

28

1   tends to exclude the possibility' that the alleged conspirators" acted in their own independent economic

2   interest). Costco speculates that (1) feedback from customers related to whether JJVCI should

3   implement the UPP it ultimately introduced, as opposed to any number of other issues and (2) this

4   feedback from customers transformed itself into an unlawful agreement between JJVCI and ECPs that

5   JJVCI would introduce the UPP and ECPs would abide by it. *See* Compl. ¶ 49. But even if JJVCI

6   sought customers' views on the possible introduction of a UPP, that would not support any inference of

7   acquiescence or agreement. The complaint incorporates by reference JJVCI's announcement of its

8   UPP, and as each of Costco's own exhibits make plain, JJVCI's policy was announced to be "unilateral

9   and does not represent an agreement between JJVCI and its authorized distributors or resellers," and

10  retailers, including Costco, were left "free to advertise and sell any UPP product at a price of their own

11  choosing." *See, e.g.*, Compl. Ex. A at 1. As much as Costco tries to shoehorn JJVCI's UPP into an

12  agreement between JJVCI and unidentified ECPs, it cannot. *See Bus. Elecs. Corp.*, 485 U.S. at 726–

13  27; *Colgate*, 250 U.S. at 305–07.

14       Even if Costco had alleged (which it does not) that the ECPs were complaining about the lower

15  prices charged by Costco or other discount retailers, "complaints about price cutters are natural—and

16  from the manufacturer's perspective, unavoidable." *Monsanto*, 465 U.S. at 763 (internal quotation

17  marks omitted); *see also O.S.C. v. Apple Computer, Inc.*, 792 F.2d 1464, 1468–69 (9th Cir. 1986)

18  (finding allegations of conspiracy lacked "substantial support" even where "voluminous complaints"

19  were made, manufacturer threatened to terminate violators, and no evidence that price discounting was

20  discussed at meetings). And Costco has not alleged (nor could it) that it was terminated as a result of

21  any complaints by ECPs. *See Monsanto*, 465 U.S. at 763–64 (complaints by competitors followed by a

22  responsive termination by the manufacturer, standing alone, does not raise an inference of conspiracy).

23       Finally, even if the Court were to credit Costco's conclusory allegations, the complaint is

24  utterly devoid of any facts identifying which ECPs participated in the alleged communications and

25  meetings, when the meetings took place, or what was allegedly discussed. There are thousands of

26  ECPs in the United States. Is Costco alleging that JJVCI secretly gathered together the nation's ECPs

27  to agree upon the terms of the UPP? Or is there some secret cabal of ECPs charged with negotiating

28

the terms of the UPP?  A reader would certainly not know from reading Costco's complaint because it is devoid of any factual allegations supporting a conspiracy involving ECPs.

### 2.    Costco Fails to Allege Facts that Plausibly Support a Conspiracy Between JJVCI and its Distributors

Costco's allegations that JJVCI and its distributors conspired to introduce the UPP, *see* Compl. ¶¶ 50, 79, fare no better.  As noted above, the language of JJVCI's pricing policy plainly contradicts that claim.  *See Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1236 (10th Cir. 2006) (no illegal vertical conspiracy established where "[t]he agreements specifically state that 'ETS does not request and will not accept Distributor's agreement to comply with any such suggested price.'").  Moreover, Costco's conclusory allegations lack sufficient factual matter to state a conspiracy claim that is plausible on its face.  *See Iqbal*, 556 U.S. at 678.

As an initial matter, Costco falls far short of "answer[ing] the basic questions" about any agreement between JJVCI and its distributors to restrict price and is exactly the type of pleading rejected by *Twombly* and *Kendall*.  *See Twombly*, 550 U.S. at 567 n.12; *Kendall*, 518 F.3d at 1047–48. Thus, Costco's allegations of *any* conspiracy—vertical or horizontal—between JJVCI and its distributors fail to describe with the necessary factual specificity which distributors were involved in the alleged conspiracy, the terms to which JJVCI and/or the distributors allegedly agreed, or any other details of the nature and scope of any agreement.[4]

To the extent that Costco alleges that JJVCI entered into a *per se* unlawful agreement with its distributors, *see* Compl. ¶ 79 ("At least the concerted action with distributors is per se illegal" under the Sherman Act),[5] that allegation is wholly conclusory and unsubstantiated.  Vertical agreements regarding price are subject to the rule of reason under the Sherman Act.  *See Leegin Creative Leather*

---

[4] Costco's allegation that the distributor ABB Concise, in a publication called "Profit Advisor," provided "instructions on how ECPs should utilize RPM [sic] to enhance ECP revenues," *see* Compl. ¶ 50, is neither probative nor relevant to any purported agreement between JJVCI and ABB Concise relating to the UPP because Costco does not allege that ABB Concise ever spoke to JJVCI (or any other manufacturer) about its publication or that the publication even referred to JJVCI's UPP at all.

[5] There is no allegation that JJVCI's relationship with any authorized distributor is anything but vertical in nature.  It is uncertain whether vertical agreements regarding price remain *per se* illegal under California and Maryland law in the wake of *Leegin*.  The Court need not reach this issue, as Costco has failed to plead an agreement, as required under both federal and state antitrust law.

1  *Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 899 (2007).

2        The complaint is otherwise utterly devoid of any allegations suggesting communications

3  among the distributors about JJVCI's UPP reflective of a horizontal agreement among competitors at

4  the same level of the distribution chain. The allegations made by Costco are even less probative of a

5  conspiracy than those made by the plaintiff in *Monsanto*. There, the claim was that distributors at the

6  same level of the supply chain conspired with the manufacturer to cut off a discount distributor

7  because it had failed to follow the manufacturer's pricing policy and was hurting the colluding

8  distributors by creating price competition. *See Monsanto*, 465 U.S. at 768. Where, as here, there is

9  absolutely no allegation of communication or collusion among horizontal competitors at the same level

10 of the supply chain and where there is no suggestion that the motive of such conduct was to eliminate

11 or reduce price competition, the claim fails to raise a plausible inference of a conspiracy.

12       Furthermore, Costco alleges no facts to support its contention that JJVCI entered into a vertical

13 agreement with its distributors regarding the need or desirability for JJVCI to introduce a UPP or that

14 JJVCI's decision to announce the UPP was in any way conditioned upon distributors' consent. "A

15 manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, so long

16 as it does so independently." *Monsanto*, 465 U.S. at 761 (citing *Colgate*, 250 U.S. at 307). A

17 manufacturer such as JJVCI is therefore entitled to set terms and conditions of the sale of its products

18 to its authorized distributors. *See, e.g., Monsanto*, 465 U.S. at 762 (an agreement to maintain prices

19 may not be inferred from the fact alone that "a manufacturer and its distributors are in constant

20 communication about prices and marketing strategy."); *Mularkey v. Holsum Bakery*, 146 F.3d 1064,

21 1065 (9th Cir. 1998) (finding no conspiracy where a manufacturer of a product dictates the price at

22 which a distributor must sell the product). "Under *Colgate*, the manufacturer can announce its resale

23 prices in advance and refuse to deal with those who fail to comply. And a distributor is free to

24 acquiesce in the manufacturer's demand in order to avoid termination." *Monsanto*, 465 U.S. at 761.

25 Consequently, JJVCI's condition that its authorized distributors sell only to resellers that comply with

26 the UPP does not constitute an agreement between JJVCI and its distributors regarding price or make

27 its authorized distributors a party to the UPP.

28

There are no allegations that JJVCI coerced distributors to support the UPP and that this coercion was necessary for the UPP to be effective. Costco alleges no facts showing that there was anything more than unilateral action on the part of JJVCI to set prices on its products and it is not enough under the Sherman Act that JJVCI had a pricing policy, set supply terms and conditions for its distributors, and dictated the prices of its products to its distributors. *See, e.g., Lucas v. Citizens Commc'ns. Co.*, 409 F. Supp. 2d 1206, 1218 (D. Haw. 2005). Rather, the UPP language cited by Costco—that JJVCI "and its authorized distributors will cease to supply UPP products to any reseller who advertises or sells UPP products to patients at a price below the UPP price," *see* Compl. ¶ 50—is simply reflective of the normal business relationship between a manufacturer and its authorized distributors, a relationship which the Supreme Court has endorsed as entirely legitimate and not violative of the antitrust laws. *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1342–43 (11th Cir. 2010) (concluding that plaintiffs must "present allegations showing why it is more plausible that [a manufacturer] and its distributors—assuming they are rational actors acting in their economic self-interest—would enter into an illegal price-fixing agreement (with the attendant costs of defending against the resulting investigation) to reach the same result realized by purely rational profit-maximizing behavior.") (relying on *Matsushita Elec.*, 475 U.S. at 587). Accordingly, Costco's bald allegations do little to challenge the premise that the distributors here were JJVCI's authorized selling agents and, as such, are entitled to follow JJVCI's policy and directions to discontinue supplying retailers that do not comply with its unilateral pricing policy.

### 3. Costco Fails to Allege Facts that Plausibly Support the Existence of a Conspiracy Between JJVCI and Itself and "Other Retailers"

Although opaque, the complaint appears to allege that it and unnamed "other retailers" entered into an illegal vertical conspiracy with JJVCI regarding the introduction of the UPP. *See* Compl. ¶¶ 9, 55, 60 ("Costco nonetheless concluded thereafter that the best interest of its members required that it agree at least temporarily with J&J and enter the Agreement" or what Costco refers to as the "Fifth RPM Policy"). Specifically, although it "was and remains opposed" to the UPP, Costco claims that, beginning in the summer of 2014, it (along with other retailers) "negotiated adjustments to the Policy" that were more favorable to its members. *Id.* ¶ 54; *see generally id.* ¶¶ 55–59. Costco maintains that

---

1  that "[t]he continuing threat of termination by J&J compelled Costco to agree to comply with the Fifth

2  RPM Policy."  *Id.* ¶ 60.  Costco uses the terms "agreed" and "negotiated" to suggest that the UPP is the

3  product of an agreement between JJVCI and Costco without which there would be no UPP.  But there

4  are no factual allegations to suggest that JJVCI conditioned the introduction of the UPP on Costco or

5  any other retailer committing to abide by its terms.  Costco and others may well have "agreed"

6  internally to comply with the UPP, but that does not transform JJVCI's announcement of a unilateral

7  policy into an agreement.  Costco offers no details about which other retailers supposedly engaged in

8  negotiations, or offers any hint of what was discussed.  Because the complaint is devoid of any facts

9  providing the most basic "who, what, where, and when" of any agreement that Costco—or any other

10  retailer for that matter—may have entered into with JJVCI as a result of the purported negotiations, the

11  allegations are purely speculative and fail as a matter of law.  *See Kendall*, 518 F.3d at 1047–48.

12      Costco's contention that it entered into an agreement with JJVCI regarding the UPP similarly

13  fails.  Costco does not allege that it had anything to do with JJVCI's introduction of the UPP.  Nor does

14  Costco allege that it was even aware of the JJVCI's plan to introduce the UPP prior to the UPP

15  becoming public.  Instead, Costco alleges that after the UPP had been announced in June 2014, JJVCI

16  met with Costco to allegedly hear its concerns and discuss a "new solution for Costco."  Compl. ¶ 58.

17  Costco concedes that no agreement was reached between it and JJVCI and "[n]egotiations" continued.

18  *Id*.

19      Costco also alludes to the fact that there is a Qualified Retail Account Agreement between

20  JJVCI and Costco, and it refers throughout its complaint to this as the defined "Agreement."  *Id.* ¶ 1.

21  If, as Costco contends, this defines the "agreement" between the two parties, then it is abundantly clear

22  that there is no agreement as to the UPP.  Since Costco has incorporated this document by reference in

23  its complaint, the Court is now free to examine it.  *See* Ex. 1.  As the Court will see, there is not a

24  single reference to the UPP or how Costco should price JJVCI's products to its members.

25      Nor can Costco salvage its claim by asserting that it was coerced by JJVCI into adhering to the

26  UPP.  *See, e.g.*, Compl. ¶ 9 ("Costco objected to J&J's RPM Policy and violated it, resulting in threats

27  from J&J that it would refuse to sell lenses to Costco.").  To establish coercion, Costco must do more

28

than allege that JJVCI intended to enforce its UPP. *See The Jeanery*, 849 F.2d at 1158–59

(manufacturer's assurance that it would "take care of things" after receiving complaints from

competitors about a retailer's price cutting was insufficient to show that any coercion took place);

*Acquaire v. Canada Dry Bottling Co. of N.Y., Inc.*, 24 F.3d 401, 410 (2d Cir. 1994) ("Evidence of

pricing suggestions, persuasion, conversations, arguments, exposition, or pressure is not sufficient to

establish the coercion necessary to transgress § 1 of the Sherman Act."); *Chavez*, 93 Cal. App. 4th at

367, 372–73 (affirming the dismissal of the complaint, finding no antitrust violation where a

manufacturer told retailers that it would monitor compliance by reviewing retailers' advertising and

receipts, by employing "mystery shoppers" at random, and by instituting a "no second chances" policy

for any single violation of the UPP). Indeed, "[n]o violation is made out unless plaintiff can show that

the supplier's conduct rose to the level of coercion sufficient to deprive the dealers of their free

choice." *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1357 n.4 (9th Cir. 1976). Here, each customer is free

to choose to adhere to JJVCI's UPP and continue to sell the products subject to the UPP or to decline to

sell those particular products.

Costco's allegations, even when viewed in their totality, simply amount to JJVCI's unilateral

revisions of its policy after receiving ordinary feedback from a customer. Costco complained that the

UPP was unfair to club stores. JJVCI considered the matter and revised the UPP. But as Costco itself

concedes, it has remained dissatisfied with the UPP and continues to object to it, culminating in this

litigation. Given the foregoing, this cannot be construed as an "agreement, combination, or

conspiracy" to restrain trade. *See Colgate*, 250 U.S. at 305–07. Costco's second, third, and sixth

causes of action for violations of the Sherman, Cartwright, and Maryland Antitrust Acts should be

dismissed in their entirety.

### B.   Costco Fails to Allege Facts Showing that It Sustained Injury in Fact, Let Alone an Antitrust Injury

Even if it could plead sufficient facts to support the allegation that the UPP constitutes vertical

pricing agreements between JJVCI and ECPs, distributors, and Costco, respectively, Costco fails to

allege that it was injured at all—let alone sustained *antitrust* injury. Costco concedes that it is

presently profiting from the UPP and any claim that it may lose sales and suffer reputational damage

1  from its compliance with the UPP is entirely speculative and unsupported by the facts it has pleaded.

2  Accordingly, Costco lacks constitutional and antitrust standing to bring its claims.

3        **1.      Costco Has Not Suffered Any Injury in Fact as the Result of the UPP**

4        It is well established that an antitrust plaintiff must adequately plead injury in fact to establish

5  standing under Article III of the Constitution and Section 4 of the Clayton Act.  *See* 15 U.S.C. § 15; *see*

6  *also Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997).  To establish Article III standing, a

7  plaintiff must show, among other things, an injury in fact that is "concrete and particularized" and

8  "actual or imminent," not "conjectural" or "hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S.

9  555, 560–61 (1992).  Costco bears the burden of showing it has satisfied this jurisdictional

10  prerequisite.  *Id.* at 561.

11        Costco fails to show that it suffered any injury as a result of the UPP as Costco freely admits

12  that it is profiting from JJVCI's recent actions.  *See* Compl. ¶ 68 ("Costco's margin on RPM lenses has

13  increased" in light of the UPP).  Given the increase in margin on each box of JJVCI's contact lenses,

14  and because the complaint does not allege that Costco has experienced a commensurate decrease in

15  demand, it follows that Costco has profited from its implementation of the UPP.  The complaint's

16  unsupported claim that the UPP "*will result* in reduced unit sales of contacts," *id.* (emphasis added), is

17  speculative and belied by Costco's contradictory admission that even with the UPP in place, it is

18  selling JJVCI contact lenses at prices lower than its competitors.  *See id.* ¶ 63.  Furthermore, Costco

19  does not (and could not) allege that it is paying higher prices for JJVCI contact lenses;[6] Costco asserts

20  only that *its customers* must pay increased prices for JJVCI's contact lenses.[7]  *See id.* ¶ 68.  The

21  complaint's allegations about harm to Costco's *customers* are insufficient to show that Costco has been

22  injured such that it has standing to bring this suit.[8]  *See Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253,

23  _____

24  [6] Costco's complaint, focusing exclusively on the UPP, fails to mention that the UPP was accompanied
     by a reduction in JJVCI's wholesale prices to Costco.  Because that fact is nowhere in the four corners
25  of the complaint or the attached exhibit, it does not form any part of this motion.

26  [7] Costco's conclusory claim that JJVCI's implementation and enforcement of its UPP are "intended to
     increase prices," *see* Compl. ¶ 69, is simply wrong and unsubstantiated.

27  [8] Costco also cannot show antitrust injury and establish antitrust standing based on injuries allegedly
     suffered by its customers.  *See* Compl. ¶ 68 ("Costco also has standing to protect its members from
28  paying more than they otherwise would for contacts."); *Associated Gen. Contractors v. Cal. Stat.*

1256 (9th Cir. 2008) (holding plaintiff must show injury to himself to satisfy Article III standing).

Costco also claims it has suffered injury as a result of harm to goodwill and increases in administrative costs, and predicts that the UPP will result in "reduced units sales of contacts and other products," Compl. ¶ 68, but such allegations do not confer standing as they are speculative, indirect, and conceivably encompass all products sold by Costco. The complaint offers no factual allegations to explain how the UPP increases Costco's administrative costs or how Costco could suffer a loss of goodwill by complying with the UPP, with which other retailers must comply and where Costco contends it will still sell at a lower price than many ECPs. Accordingly, Costco has failed to allege facts showing that it has suffered injury in fact; instead, the complaint is replete with speculative and conjectural assertions which are insufficient to confer standing. *See Lujan*, 504 U.S. at 560–61.

**2.     Costco Does Not Have Antitrust Standing to Bring its Antitrust Claims Because It Has Failed to Allege an Antitrust Injury in a Specific Product Market**

Even if Costco's complaint could establish that it suffered some cognizable form of harm, Costco still lacks antitrust standing because it has failed to plead facts sufficient to show that this injury flows directly from harm to competition in a specific product market.[9] The Supreme Court in *Associated General* identified certain factors for determining whether a plaintiff has antitrust standing including: (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative nature of the harm; (4) the risk of duplicative recovery and (5) the complexity of apportioning damages. *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1054–55 (9th Cir. 1999) (citing *Associated Gen. Contractors*, 459 U.S. at 535–36 (1983)).

---

*Council of Carpenters*, 459 U.S. 519, 534 (1983) ("Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.")

[9] A plaintiff is similarly required to demonstrate antitrust injury under both the Cartwright Act and the Maryland Antitrust Act. *See, e.g.*, *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 548 (1998) (plaintiff must show that it "suffered an injury which was *caused* by restraints on competition"); *Quality Disc. Tires, Inc. v. Firestone Tire & Rubber, Co.*, 282 Md. 7, 23 (1978), *overruled on other grounds by Natural Design, Inc. v. Rouse, Co.*, 302 Md. 47 (1984) (plaintiff "must prove: (1) that he has in fact suffered an injury; (2) that the injury resulted from the violation of the antitrust laws; and (3) the amount in which he had been injured").

To demonstrate antitrust injury under the first *AGC* factor, Costco must show that it was "harmed by the defendant's anticompetitive contract, combination, or conspiracy." *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). "There can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct." *Am. Ad Mgmt., Inc.* 190 F.3d at 1056. Indeed, Costco must allege the "ways in which . . . it is in a 'worse position' as a consequence of the defendant's conduct." *GATT Commc'ns v. PMS Assocs., LLC*, 711 F.3d 68, 76 (2d Cir. 2013) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 (1977)). Moreover, to show antitrust injury Costco must further plead facts sufficient to show that it "suffered its injury *in the market where competition is being restrained.*" *Am. Ad Mgmt.*, 190 F.3d at 1057 (emphasis added). As the Ninth Circuit has held, "Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Id.*

Costco's general and conclusory allegations regarding harm to competition in an unspecified contact lens market fall woefully short of establishing a tangible injury of the type the antitrust laws were intended to prevent. Significantly, the Supreme Court has recognized that minimum resale price maintenance agreements to implement minimum resale prices—which go beyond the unilateral conduct at issue here—"can stimulate interbrand competition," and that "the primary purpose of the antitrust laws is to protect [this type of] competition." *Leegin*, 551 U.S. at 890 (alteration in original).

Furthermore, Costco fails to allege sufficient facts showing antitrust injury in a specific product market that was restrained by JJVCI's unilateral action. To properly allege a relevant product market, Costco must allege that, if the price of one product included in the market increases, customers would switch to purchasing a different product in the market instead. *See Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1196 (N.D. Cal. 2008). But Costco equivocates as to what product market it claims is actually harmed by the UPP. In portions of its complaint, Costco suggests that the relevant product market is the entire market of contact lenses at the wholesale and retail levels, which include contact lenses from other manufacturers, and JJVCI lenses that are not subject to the UPP, *see* Compl. ¶¶ 33–35, 68; at other times, it suggests that the relevant market is JJVCI lenses subject to the UPP, which it

claims to be incapable of substituting, *see id.* ¶ 60.  Tellingly, Costco does not allege facts that would explain why it is plausible to exclude JJVCI and other manufacturers' contact lenses not subject to an UPP from the relevant product market as ECPs and consumers may view those products as reasonable substitutes for each other and would switch among them in response to changes in relative prices. Without allegations showing the specific market in which competition was actually harmed, Costco cannot allege that it suffered any antitrust injury on its own account.

Moreover, as discussed in the preceding section, Costco's allegations regarding purported antitrust injury are entirely speculative and not based on any specific evidentiary facts.  Notably, Costco concedes that its margin on UPP lenses has increased.  *See* Compl. ¶ 68; *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999) (plaintiffs failed to establish antitrust injury in price-fixing case where plaintiffs "stand to benefit from the fact that prices for those services are inflated"); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co*., No. 13-cv-01180, 2014 U.S. Dist. LEXIS 133540, at *27 (N.D. Cal. Sept. 22, 2014) (no antitrust injury where, inter alia, the complaint lacked facts demonstrating that alleged overcharges could be traced to show injury to plaintiffs).  Accordingly, such speculative allegations of injury are insufficient to confer antitrust standing.

## III.   THERE IS NO PRIVATE RIGHT OF ACTION UNDER THE FTC ACT OR NY GBL § 369-A

Costco's first cause of action is for a "declaratory judgment as to the parties' contract," apparently seeking a declaration that JJVCI and Costco's alleged agreement with respect to JJVCI's UPP violates Section 5 of the Federal Trade Commission Act (the "FTC Act").  Compl. ¶¶ 73–76. Costco's fifth cause of action purports to be for breach of contract under New York law, but appears to actually seek a similar declaration that the parties have an agreement related to the UPP that violates New York General Business Law Section 369-a and is thus invalid.  *Id.* ¶ 96 ("Unless Costco's rights are declared and honored … Costco and its members will continue to be injured.")

The Qualified Retail Account Agreement between JJVCI and Costco, however, pertains only to the prices at which Costco may *purchase* contact lenses, not the prices at which Costco may sell contact lenses to its members.  *See supra* at p. 6.  Nor has JJVCI entered into any agreement with

Costco regarding any such resale prices—the UPP is unilateral, and JJVCI has specifically disclaimed any such agreement with Costco (or anyone else) relating to such retail prices. *See supra* at p. 4; *see also* Compl. Ex. E at 1 ("The UPP is unilateral and does not represent an agreement between JJVCI and its authorized distributors or resellers.")  There is therefore no agreement between JJVCI and Costco relating to resale prices that JJVCI could have breached or for which the Court can or should issue a declaratory judgment.  Because Costco has failed to allege any contract with JJVCI relating to the UPP, Costco's first and fifth causes of actions fail to the extent that they purport to seek a declaration related to any contract. *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (Under New York law, claim for breach of contract requires "the formation of a contract between the parties.")

Furthermore, Costco's claims fail for a separate, independent reason:  even assuming a contract between Costco and JJVCI did exist, Costco is precluded from bringing a private action for violation of either the FTC Act or New York General Business Law Section 369-a.

### A.     The FTC Act

Costco may not bring an action to enforce the FTC Act.  As courts in this Circuit have repeatedly held, the FTC Act does not provide private parties with a "direct remedy, either explicitly or implicitly," as "protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission." *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973); *see also Boisvert v. Li*, No. 13-cv-01590, 2013 U.S. Dist. LEXIS 118134, at *8 (N.D. Cal. Aug. 20, 2013) (citing *Carlson*, 483 F.2d at 280); *Sobayo v. Public Storage*, No. C 13-01804, 2013 U.S. Dist. LEXIS 105116, at *8–9 (N.D. Cal. July 26, 2013) (same).  Costco may not pursue claims against JJVCI based on alleged violations of the FTC Act.

Styling a claim as a request for a declaratory judgment does not evade the restrictions on private actions. *See Ritchie v. Cmty. Lending Corp.*, No. CV 09-02484, 2009 U.S. Dist. LEXIS 73216, at *13–14 (C.D. Cal. Aug. 12, 2009) (dismissing claim for declaratory judgment for violation of FTC Act as the Act "does not provide private persons with an administrative remedy for private wrongs.").  Private parties may not request a declaration about how the FTC *might* rule on a given policy. *See*

1    *Nat'l Cable Television Coop., Inc. v. Lafayette City-Parish Consol. Gov't of Lafayette, La.*, Civ. A. No.

2    10-2254, 2010 U.S. Dist. LEXIS 124387, at *40–41 (D. Kan. Nov. 23, 2010) (dismissing claim for

3    declaration on whether FTC would approve plaintiff's policy).

4              Costco also argues that the UPP does not comply "with the intent of the" Fairness to Contact

5    Lens Consumers Act ("FCLCA").  Compl. ¶ 74.  The FCLCA, however, provides that "[t]he Federal

6    Trade Commission shall enforce [the FCLCA] … in the same manner, by the same means, and with the

7    same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal

8    Trade Commission Act … were incorporated into and made a part of this Act."  15 U.S.C. § 7608.

9    Thus, the same bar on private enforcement of the FTC Act applies equally to the FCLCA.

10            **B.    New York General Business Law § 369**

11            As with the FTC Act, there is no private right of action under New York General Business Law

12   § 369-a.  Section 369-a provides that a contract provision that prevents a retailer from selling a

13   commodity at a price less than that "stipulated by the vendor or producer shall not be enforceable or

14   actionable at law."  But it resides within a statutory article that is subject to exclusive enforcement by

15   the New York Attorney General; thus, there is no private right of action to enforce it, including for

16   "declaratory or injunctive relief."  *Worldhomecenter.com, Inc. v. KWC Am., Inc.*, 10 Civ. 7781, 2011

17   U.S. Dist. LEXIS 104496, at *25 (S.D.N.Y. Sept. 15, 2011) (finding no private right of action and

18   dismissing claim for injunctive relief under section 369-a).

19            Even if a private right of action under the statute did exist, the statute merely provides that a

20   contractual provision setting minimum resale prices may not be enforced in New York State court; the

21   statute does not provide a mechanism for plaintiffs to have such contractual provisions declared illegal

22   or unlawful. *See People v. Tempur-Pedic Int'l, Inc.*, 95 A.D.3d 539, 540 (1st Dep't 2012) ("[T]his

23   statutory language makes clear that an action may not be maintained in a court of law to enforce such a

24   provision … there is nothing in the text to declare those contract provisions to be illegal or unlawful;

25   rather the statute provides that such provisions are simply unenforceable in the courts of this state.").

26   Therefore, even if there were a private right of action, Section 369-a is inapplicable because Costco has

27   failed to allege a contract between JJVCI and Costco that incorporates or references JJVCI's UPP

28

1   prescribing the minimum retail price retailers can charge for certain contact lenses.

2          Costco's first and fifth causes of action should be dismissed.

3   **IV.   PLAINTIFF'S UCL CLAIM FAILS BECAUSE THE ANTITRUST CLAIMS FAIL**

4          Costco's fourth cause of action alleges that the UPP is both unlawful and unfair under the

5   California Unfair Competition Law ("UCL").[10]  Compl. ¶¶ 88–92.  The UCL prohibits "unlawful,

6   unfair, or fraudulent business act[s]."  Cal. Bus. & Prof. Code § 17200.  Costco's claims fail under

7   either prong of the UCL.

8          **A.   Costco Has Failed to Plead Unlawful Conduct Under the UCL**

9          To state a claim that a practice is unlawful under the UCL, a plaintiff must adequately plead a

10  violation of another law.  The UCL then "treats these violations, when committed pursuant to business

11  activity, as unlawful practices independently actionable under [the UCL] and subject to the distinct

12  remedies provided thereunder."  *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508,

13  515 (2002).  Costco claims that the UPP violates the UCL because it in turn violates the Sherman Act,

14  the Cartwright Act, and the FTC Act.  Compl. ¶ 89.

15         As discussed above, Costco has failed to plead an independent violation of the Sherman or

16  Cartwright Acts.  Its claim for violation of the UCL based on the violation of these statutes accordingly

17  fails.  *See, e.g.*, *Piñon v. Bank of Am., N.A.*, 741 F.3d 1022, 1027 (9th Cir. 2014) ("California's Unfair

18  Competition Law … makes violations of other state and federal laws 'independently actionable as

19  unfair competitive practices.' … Because we conclude that the issuers' conduct did not violate [the

20  other statutes at issue], there is no derivative liability under the Unfair Competition Law."); *Ross v.*

21  *Morgan Stanley Smith Barney LLC*, No. 2:12-cv-09687, 2013 U.S. Dist. LEXIS 31822, at *19 (C.D.

22  Cal. Mar. 7, 2013) (holding UCL claim failed based on failure to plead violations of underlying

23  statutes); *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (4th Dist. 2012) ("When a statutory

24  claim fails, a derivative UCL claim also fails.")

25         Costco's claim based on the FTC Act also fails.  As discussed above, *see supra* at III.A, there is

26  no private right of action under the FTC Act and Plaintiff may not use a state law cause of action to

27  _____

28  [10] Cal. Bus. & Prof. Code § 17200 *et seq.*

------

1   evade this restriction.  *See O'Donnell v. Bank of Am., N.A.*, 504 F. App'x 566, 568 (9th Cir. 2013)

2   (unpublished opinion) ("The [FTC Act] doesn't create a private right of action … and plaintiffs can't

3   use California law to engineer one."); *Aleem v. Bank of Am., N.A.*, No. EDCV 09-01812, 2010 U.S.

4   Dist. LEXIS 11944, at *9 (C.D. Cal. Feb. 9, 2010) ("The UCL cannot create a private right of action

5   where none exists under the federal statute.")

6          **B.      Costco Has Failed to Plead Unfair Conduct Under the UCL**

7          Costco's claims of unfairness under the UCL fail for the same reason—the UPP cannot be

8   considered unfair if it is simultaneously condoned by the antitrust laws.  For example, in *Chavez v.*

9   *Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001), the plaintiff brought putative class action claims under

10  the Cartwright Act and the UCL regarding the defendant manufacturer's unilateral pricing policy for its

11  dishwashers.  The Court of Appeals affirmed the dismissal of plaintiff's Cartwright Act claim on the

12  ground that the plaintiff's allegations were too conclusory to establish an agreement.

13         The court held that the plaintiff was therefore precluded from alleging a violation of the UCL

14  under the unfairness prong.  Recognizing that unilateral pricing policies were permitted under the

15  antitrust laws (including under *Colgate*), the court concluded that "conduct that the courts have

16  determined to be permissible under the *Colgate* doctrine cannot be deemed 'unfair' under the unfair

17  competition law."  *Id.* at 375.  As the court recognized, to "permit a separate inquiry into essentially the

18  same question under the unfair competition law [as under the antitrust laws] would only invite conflict

19  and uncertainly and could lead to the enjoining of procompetitive conduct."  *Id.*; *see also City of San*

20  *Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 692 (9th Cir. 2015) ("An independent claim

21  under California's UCL is therefore barred so long as [defendant's] activities are lawful under the

22  antitrust laws."); *Belton v. Comcast Cable Holdings LLC*, 151 Cal. App. 4th 1224, 1239–40 (2007)

23  (dismissing claim of unfairness under UCL where conduct complied with antitrust laws).

24         *Chavez* squarely controls Costco's claims here—like the plaintiff in *Chavez*, it has brought

25  claims based on a unilateral pricing policy and failed to plead facts sufficient to establish an agreement

26  between the defendant manufacturer and its retailers.  *See supra* at I.A.3.  There is no dispute that

27

28

1    unilateral pricing policies are permissible under *Colgate*, and thus fair for purposes of the UCL.[11]

2    Accordingly, Costco's fourth cause of action should be dismissed.

3                                      **CONCLUSION**

4          For the foregoing reasons, Plaintiff's complaint should be dismissed in its entirety.

5    DATED:  April 17, 2015

6                                             /s/ *William F. Cavanaugh, Jr.*

7                                     William F. Cavanaugh, Jr. – Cal. Bar No. 133461
                                      *wfcavanaugh@pbwt.com*
8                                     PATTERSON BELKNAP WEBB & TYLER LLP
                                      1133 Avenue of the Americas
9                                     New York, NY 10036
                                      Tel:     (212) 336-2000
10                                    Fax:     (212) 336-2222

11                                    Peter K. Huston – Cal. Bar No. 150058
                                      *phuston@sidley.com*
12                                    SIDLEY AUSTIN LLP
                                      555 California Street, Suite 2000
13                                    San Francisco, CA 94104
                                      Tel:     (415) 772-1200
14                                    Fax:     (415) 772-7400

15                                    *Attorneys for Johnson & Johnson Vision Care, Inc.*

16

17

18

19

20

21

22

23

24

25

26    _____

27    [11] Furthermore, as discussed above, even agreements regarding minimum retail prices can be
      permissible in some circumstances.  *See supra* at II.A.2.  The Court does not need to reach this issue,
28    however, as Costco has failed to allege an agreement of any kind.

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on April 17, 2015, I caused to be electronically filed the foregoing

3 **Defendant Johnson & Johnson Vision Care, Inc.'s Motion to Dismiss Plaintiff's Complaint and**

4 **Memorandum of Points and Authorities in Support Thereof** with the U.S. District Court for the

5 Northern District of California using the CM/ECF system, which sent notification of such filing to all

6 counsel of record.

7                                          By  _/s/ William F. Cavanaugh, Jr._
                                                  William F. Cavanaugh, Jr.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28